# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LAMAR C. CHAPMAN III,

        *Plaintiff,*

    *-vs-*

THE UNITED STATES MARSHAL,
for the NORTHERN DISTRICT OF
ILLINOIS; KIM WIDUP, *in his individual
and official capacity*; GARTH G.
REHBERG, a/k/a "The Hammer" *in his
individual and official capacity*;
UNKNOWN DEPUTY MARSHALS for
the UNITED STATES MARSHAL
GREAT LAKES FUGITIVE RECOVERY
UNIT; DAVID PEARLMAN; MICHELE
UTHE; *and* J. RUSSELL GEORGE, *in their
individual capacity,*

        *Defendants.*

**Case Number 1:07-cv-06531**

07 cv 6531

Honorable Ruben Castillo,
*Judge Presiding*

Honorable Sidney I. Schenkier
*United States Magistrate*

*Civil Rights Lawsuit
42 United States Code
Sections, 1983, 1988, et al.*

Previous Case Number: 07–cv–2174

## NOTICE OF FILING

TO:    William W. Dobbins
        Clerk of the Court
        Eastern Division
        Everett McKinley Dirksen
        United States Courthouse - 20th Floor
        219 South Dearborn Street
        Chicago, IL 60604

Patrick J. Fitzgerald, Esq.
United States Attorney
c/o Jonathan C. Haile, Esq.
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-2055

*PLEASE TAKE NOTICE* that on Wednesday, April 30, 2008, the undersigned filed with the Clerk of the Court **PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**, *as served upon you herewith.*

## PROOF OF SERVICE

    LAMAR C. CHAPMAN III, Non-Attorney, Non-Lawyer, Plaintiff, *Pro Se*, being first duly sworn and under oath, and in consideration of the penalties of perjury states that he served this Notice and all relevant attachments on the above-named parties or their designated representative *via* first class U.S. Mail, addressed as indicated and mailed with proper postage prepaid from the United States Postal Facility located on Adams and Dearborn Streets, Chicago, Illinois 60604 on Wednesday, April 30, 2008, before the hour of 5:00 PM.

Non-Attorney, Non-Lawyer
Plaintiff, *Pro Se*
LAMAR C. CHAPMAN III, *Solo Fides*
Alexander, Cavanaugh & Block, LLC
1314 Kensington Road
Post Office Box 5232
Oak Brook, IL 60523-5232
Telephone (630) 881-1936

LAMAR C. CHAPMAN III, Plaintiff, *Pro Se*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FILED

APR 3 0 2008

Apr 30 2008

CLERK, U.S. DISTRICT COURT
MICHAEL W. DOBBINS

| | |
|---|---|
| LAMAR C. CHAPMAN III, | ] |
| | ] **Case Number 1:07-cv-06531** |
| *Plaintiff,* | ] |
| -vs- | ] Honorable Ruben Castillo, |
| | ] *Judge Presiding* |
| THE UNITED STATES MARSHAL, | ] |
| for the NORTHERN DISTRICT OF | ] Honorable Sidney I. Schenkier |
| ILLINOIS; KIM WIDUP, *in his individual* | ] *United States Magistrate* |
| *and official capacity*; GARTH G. | ] |
| REHBERG, a/k/a "The Hammer" *in his* | ] *Civil Rights Lawsuit* |
| *individual and official capacity*; | ] *42 United States Code* |
| UNKNOWN DEPUTY MARSHALS for | ] *Sections, 1983, 1988, et al.* |
| the UNITED STATES MARSHAL | ] |
| GREAT LAKES FUGITIVE RECOVERY | ] Previous Case Number: 07–cv-2174 |
| UNIT; DAVID PEARLMAN; MICHELE | ] |
| UTHE; *and* J. RUSSELL GEORGE, *in their* | ] |
| *individual capacity,* | ] |
| *Defendants.* | ] |

## MOTION FOR LEAVE TO FILE
## FIRST AMENDED COMPLAINT INSTANTER

*NOW COMES PLAINTIFF*, Non-Attorney, Non-Lawyer, *Pro Se* and pursuant to

Rule 6(b) of the Federal Rules of Civil Procedure respectfully move this Honorable Court

to allow the Plaintiff to file the attached First Amended Complaint and for this Honorable

Court to make a reasonable decision, states as follows:

1.    On Tuesday, January 15, 2008, this Honorable Court granted the

unrepresented Plaintiff's motion to reinstate the above-referenced civil rights lawsuit.

2.    On Tuesday, April 22, 2008, this Honorable Court denied the Defendants'

Motion to Dismiss and ordered the Defendants to answer Plaintiff's complaint.

3.    Plaintiff's complaint originally named "Unknown Deputy Marshals" and

through due diligence, the unrepresented Plaintiff has identified the four "Unknown

Deputy Marshals" and has amended his complaint to include the same and has prepared

the Summons of this Honorable Court for service of the same.

1

4.   Plaintiff seeks leave to file his first amended complaint and seeks a modest twenty-one (21) day extension of time to effectuate service of summons of the newly identified Defendants.  May 15, 2008, is the statutory deadline for service of summons in the above-captioned matter.

5.   Plaintiff has served counsel for the Defendants with a copy of this Motion and the First Amended Complaint.  To grant this Motion will not prejudice any party to this litigation.

*WHEREFORE*, Lamar C. Chapman III, Non-Attorney, Non-Lawyer, *Pro Se*, respectfully prays that this Honorable Court will allow for the *instanter* filing of his First Amended Complaint; for a modest twenty-one (21) day extension of time to effectuate Service of summons in the above-captioned matter; and for such additional relief that is morally and lawfully warranted.  GOD BLESS THIS HONORABLE COURT.

*Very Respectfully submitted,*

LAMAR C. CHAPMAN III, Plaintiff, *Pro Se*

**DATED: April 30, 2008**

Non-Attorney, Non-Lawyer
Plaintiff, *Pro Se*
LAMAR C. CHPMAN, *Solo Fides*
Alexander, Cavanaugh & Block, LLC
1314 Kensington Road
Post Office Box 5232
Oak Brook, IL 60523-5232
Telephone (630) 881-1936
Email: lasallecompanies@aol.com

2

# PLAINTIFF'S EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

*RECEIVED*

*APR 3 0 2008*

*MICHAEL W. DOBBINS*
*CLERK, U.S. DISTRICT COURT*

|  |  |
|---|---|
| LAMAR C. CHAPMAN III, | ] |
| *Plaintiff,* | ] **Case Number 1:07-cv-06531** |
| -vs- | ] |
|  | ] Honorable Ruben Castillo, |
| THE UNITED STATES MARSHAL, | ] *Judge Presiding* |
| for the NORTHERN DISTRICT OF | ] |
| ILLINOIS; KIM WIDUP, *in his individual* | ] Honorable Sidney I. Schenkier |
| *and official capacity*; GARTH G. | ] *United States Magistrate* |
| REHBERG, a/k/a "The Hammer" *in his* | ] |
| *individual and official capacity*; | ] *Civil Rights Lawsuit* |
| UNKNOWN DEPUTY MARSHALS for | ] *42 United States Code* |
| the UNITED STATES MARSHAL | ] *Sections, 1983, 1988, et al.* |
| GREAT LAKES FUGITIVE RECOVERY | ] |
| UNIT; DAVID PEARLMAN; MICHELE | ] Previous Case Number: 07–cv-2174 |
| UTHE; *and* J. RUSSELL GEORGE, *in their* | ] |
| *individual capacity,* | ] |
| *Defendants.* | ] |

## FIRST AMENDED COMPLAINT

Lamar C. Chapman III, Non-Attorney, Non-Lawyer, Plaintiff, *Pro Se*, complains

of the United States Marshal Service for the Northern District of Illinois ("Marshal");

Defendant Kim Widup ("Widup"), United States Marshal for the Northern District of

Illinois; Defendant Garth G. Rehberg, ("Rehberd") Deputy United States Marshal;

Defendant Sean O'Neal, Deputy United States Marshal Great Lakes Fugitive Recovery

Unit, ("GLFRU"); Defendant Margaret Walden, ("Walden") Supervisor Deputy United

States Marshal; Defendant Melody Waldron, ("Waldron") Supervisor Deputy United

States Marshal; Defendant Paul Banos, ("Banos"), Deputy United States Marshal;

Defendant Clark Marquez, ("Marquez"), Deputy United States Marshal; Yvette Pearson,

("Pearson"), Warrant Issuing Officer, United States Marshal; Defendant David Perlman,

("Perlman"), Revenue Agent for the United States Department of the Treasury; Michele

Uthe, ("Uthe"), United States Treasury Office of the Inspector General; and J. Russell

George, ("George"), Inspector General, United States Department of the Treasury, as follows:

## JURISDICTION AND VENUE

1.    Jurisdiction is proper in this Court pursuant to 28 U.S.C., Section 1331 and 28 U.S.C., Section 1343 because this action arises under the laws of the United States, specifically the United States Constitution, the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C., Section 1983 and 42 U.S.C., Section 1988. This Court has pendant jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C., Section 1367.

2.    Venue is proper in this District pursuant to 28 U.S.C., Section 1391(b) because Defendants reside in this District and because the activities giving rise to this cause of action occurred in this District.

## INTRODUCTION AND BRIEF HISTORY OF RACIALLY BASED UNCONSTITUTIONAL AND RETALITORY CONDUCT

3.    This lawsuit is intended to redress the intentional and fundamental violations of Plaintiff's civil rights. It is apparent that the Defendants "have a real zeal for justice that is not in accordance with the law." Plaintiff's constitutional rights were grossly suspended and violated for retaliatory purposes only to teach the Plaintiff a lesson or to "make an impression" on the distinguished, African-American Plaintiff. *See October 22, 2004, Report of Proceedings held in case number 04-cr-0307-1 by reference made a part hereof.* For example, Plaintiff has been incarcerated in a maximum security institution for ten and one half (10 ½) months on a six (6) month sentence that has never amounted to a state or federal crime or state or federal jurisdiction on nothing more than the "say so" authority of a vindictive federal employee, acting in retaliation and under the color of law.

2

4.      As a result of Defendants' unconstitutional conspiracy as set forth herein, Plaintiff was arrested by local law enforcement officers without any state or federal arrest warrant or any other legal authorization and on an intentionally and falsely manufactured federal arrest warrant. See, **Exhibit, A** *attached hereto and made a part hereof.* Plaintiff's residence was broken into under the color of law; searched without a warrant, permission or legal authorization and precious jewelry in the form of a thirty (30) year old wrist watch collection containing eight (8) gold watches were seized, stolen and removed from Plaintiff's residence.

5.      Defendants herein interfered with the Plaintiff's due process rights to call local 911 emergency to report an aggravated residential burglary; where local village law enforcement officials refused to send a patrol car to the Plaintiff's residence in accordance with well-settled Village policy to facilitate a police report; and after forcing the Plaintiff to wait more than twelve (12) months, local law enforcement officials acting as agents for the Defendants took Plaintiff's complaint only after Plaintiff lobbied local, state and federally elected officials and held a personal conference with the local Chief of Police. Thereafter, using false information supplied by Defendants, local law enforcement officers filed what amounts to a false and unconstitutional police incident report.

## SUMMARY OF ACTION

6.      On or about March 7, 2004, Plaintiff telephoned the Waukegan Police Department 911 Emergency and reported Defendant David Perlman for criminal trespass to property and requested that Defendant Perlman be removed from Plaintiff's business advisement clients' place of business because Defendant Perlman came upon Plaintiff's clients' property without a warrant, citation, notice, appointment, summons or any other legal justification.

3

7.    The Waukegan Police Department dispatched two police cars with emergency lights flashing. Defendant Perlman, ran from Plaintiff's clients' place of business to enter his parked car. The Waukegan Police Officers stopped Defendant Perlman from leaving the parking lot and gave Defendant Perlman a verbal warning and admonished Defendant Perlman that if he came back to Plaintiff's clients' place of business without an appointment, notice, warrant, citation, summons or any other legal authorization that Defendant Perlman would be locked up and charged with the criminal trespass to property.

8.    On or about March 14, 2004, Plaintiff followed-up and filed a written complaint with Ms. Diane Heath, Defendant Perlman's supervisor in the Chicago Office of Inspector General for the United States Department of the Treasury.

9.    In retaliation, on or about March 21, 2004, at the hour of 7:30 a.m., Defendant Michele Uthe and her team of unidentified treasury agents appeared at the Plaintiff's home and questioned the Plaintiff about two (2) business letters delivered by executive messenger, Plaintiff had authored five (5) years prior thereto, in March 13, 1999 and March 21, 1999, and authored by Plaintiff and executed in his twenty-four (24) year old proprietary property and marketing alias of "J. Andrew Johnston." See, **Exhibit B,** *attached hereto and made a part hereof as a detailed summary titled "Memorandum on Injustice", written for the benefit of the United States Senate Judiciary Sub-Committee.*

10.    Defendant Uthe, demanded that the Plaintiff provide her with hand-writing samples. Plaintiff refused to provide hand-writing samples and admonished Defendant Uthe to get a warrant, court order, or other legal authorization.

11.    Thereafter, Defendant Uthe and Defendant J. Russell George, in retaliation conspired to cause the African-American, Plaintiff to be indicted by the federal grand

4

jury, for possession of a forged security on a clearly "local law" matter where Plaintiff's

counsel knowingly engaged in a conspiracy to commit malpractice and advised Plaintiff

to plead guilty in exchange for four (4) months house arrest. Although Plaintiff pled

guilty to the non-federal, non-criminal, retaliatory indictment, Plaintiff was

unconstitutionally sentenced to six (6) months imprisonment to be served at the

Maximum Security Penitentiary in Terre Haute, Indiana. On Friday, February 4, 2005,

the judge presiding in the related criminal proceeding, denied the Plaintiff's request for

extension of time to retain new criminal counsel and granted the Plaintiff's oral request to

be arrested in lieu of an unconstitutional surrender in violation of the due process clause

of the United States Constitution. *See February 4, 2005, Report of Proceedings in case*

*number 04-cr-0307-1, by reference made a part hereof.*

12.     During the week of April 1, 2005, through and including April 8, 2005, as

publicly announced by Mr. Alberto Gonzales, the United States Attorney General and the

United States Justice Department in cooperation and conjunction with state, county and

local law enforcement agencies throughout the United States, Defendants commenced a

nationwide sweep code named "Operation Falcon." According to figures provided by the

United States Justice Department and the Attorney General for the United States as

broadcasted in its April 9, 2005, News Conference, during this week, more than 10,800

violent offenders with outstanding felony warrants were arrested nationwide.

13.     For racially motivated and racially retaliatory reasons Defendants placed

the Plaintiff on the "Operation Falcon" outstanding fugitive warrant list by Defendant

Yvette Pearson without any warrant or the authorization of any state or federal judge or

magistrate. See, June 7, 2005, Livescan correction form Livescan Chicago (CHRISC)

DCN# 016205654 and Livescan State Police (BFI), TCN# LS10000 7016205654, "NOT

A WARRANT" change as executed by the Franklin Park Police Department to correct

the false and facially fraudulent Federal Arrest Warrant Number 04-cr-307-1, *attached hereto as* **Exhibit C** *and respectfully made a part hereof.*

14.     Based on information and belief, this legally void, false and facially fraudulent warrant and its correlating "local law matter" criminal case was placed on the African American, Plaintiff for his outspoken and political lobbying against certain local federal employees for their civil injustice and "weaponization" of our system of justice over the past twenty-four (24) uninterrupted years.

15.     As a result and in retaliation for Plaintiff filing a written complaint against Mr. David Perlman, an Internal Revenue Service Debt Collector, with the Waukegan Police Department; and his removal (criminal trespass to property) from the Waukegan, Illinois Corporate Offices of Plaintiff's former business advisement clients; and for filing a written complaint with Ms. Diane Heath, his local supervisor with the Internal Revenue Service Office of the Inspector General for Mr. Perlman's unlawful conduct, Plaintiff was knowingly and intentionally, constitutionally violated under the color of law.

16.     Defendants herein, although fraudulently misled by certain local law enforcement, conspired with the same and under the color of law deliberately conspired and intentionally failed to provide the African American, Plaintiff with basic and fundamental constitutional rights, including but not limited to filing a false and slanderous or defamatory one year late, Hinsdale Police Department Incident Report; unlawfully overlooking or excusing the criminal act of aggravated residential burglary; violating Plaintiff's absolute constitutional rights to due process; and equal protection under the law.

## PUBLIC RECORD AND *PROFACTO* BACKGROUND

17.     Plaintiff, a highly decorated African American; an alumnus of the United States Naval Academy, recipient of a Presidential Appointment (*Richard Milhous Nixon*);

6

Congressional Nomination (Honorable William L. Dawson); Gubernatorial Military

Commission (*Honorable Richard B. Ogilvie*); and Judicial Appointment (*Honorable*

*Frances Barth, Circuit Court of Cook County, Illinois*) is Chairman and Chief Executive

Officer of Christopher LaSalle and Company and LaSalle Companies, business

advisement and holding firms and founder of the same as established on February 15,

1980, and October 13, 1982, respectively.

18.    On October 14, 1986, this Court, Honorable Milton I. Shadur, Senior

Judge presiding over a petition to pierce Plaintiff's Corporate Vail, denied said petition

and this Court found "*Mr. Chapman to be ingenious.*" *See* Christopher LaSalle and

Company, Incorporated *vs.* Heller Financial, Incorporated, *Civil Case Number 86-cv-*

*6001, by reference made a part hereof.* And on September 1996, this Court, Honorable

James B. Moran, Senior Judge presiding in the civil rights case of Lamar C. Chapman III

*vs.* Louise Gasperec; The Village of Homewood, *et al.,* case number 96-cv-05299, where

this Court found Plaintiff's civil rights lawsuit "*...to be cut and dried.*"

## PARTIES

19.    **The United States Marshal.**  Defendant United States Marshal is a

federal agency and operating subsidiary of the United States Justice Department and

maintains its headquarters in Washington, DC.

20.    **Kim Widup.**  Defendant Kim Widup at all times alleged herein is a

United States Marshal with the United States Marshal Service who serves as U.S.

Marshal for the Northern District of Illinois, Eastern Division.  Kim Widup is sued in his

individual and in his official capacity as an officer of the United States Marshal Service

and has acted as policy maker pursuant to color of government authority vested in him by

federal officials located in Washington, DC and has acted under the color of law.

21. **Garth G. Rehberg.** Defendant Garth G. Rehberg a/k/a "The Hammer" at all times alleged herein is a federal employee employed by the United States Marshal Service who serves as U.S. Marshal Fugitive Recovery Team Leader for the Great Lakes Division. Garth G. Rehberg is sued individually and in his official capacity as an officer of the United States Marshal Service and has acted as limited and active policy maker and enforcer pursuant to color of government authority vested in him by his employment and by Defendant Kim Widup and has acted under the color of law.

22. **Margaret Waldren.** Defendant Margaret Waldren at all times alleged herein is a federal employee employed by the United States Marshal Service who serves as a supervisor in the Marshal Service Fugitive Recovery Unit and has acted under the color of law and is being sued in her individual and official capacity.

23. **Melody Waldron.** Defendant Melody Waldron at all times alleged herein is a federal employee employed by the United States Marshal Service who serves as a supervisor in the Marshal Service Fugitive Recovery Unit and has acted under the color of law and is being sued in her individual and official capacity.

24. **Paul Banos.** Defendant Paul Banos at all times alleged herein is a federal employee, employed by the United States Marshal Service who serves as a Deputy Marshal for the United States Marshal Service, Fugitive Recovery Unit and has acted under the color of law and is being sued in his individual and official capacity.

25. **Clark Marquez.** Defendant Clark Marquez at all times alleged herein is a federal employee, employed by the United States Marshal Service who serves as a Deputy Marshal for the United States Marshal Service, Fugitive Recovery Unit and has acted under the color of law and is being sued in his individual and official capacity.

26. **Sean O'Neal.** Defendant Sean O'Neal at all time alleged herein is a federal employee, employed by the United States Marshal Service who serves as a

8

Deputy Marshal for the United States Marshal Service, Fugitive Recovery Unit and has acted under the color of law and is being sued in his individual and official capacity.

27.    **Yvette Pearson**. Defendant Yvette Pearson at all times alleged herein is a federal employee, employed by the United States Marshal Service who serves as a Warrant Issuing Clerk for the United States Marshal Service, Fugitive Recovery Unit and has acted under the color of law and is being sued in her individual and official capacity.

28.    **David Perlman.** Defendant David Perlman is an employee of the United States Government as a debt collector for the United States Department of the Treasury and at all times alleged herein has acted under the color of law and is being sued in his individual and official capacity.

29.    **Michele Uthe.** Defendant Michele Uthe is an employee of the United States Government as a debt collector for the United States Department of the Treasury and at all times alleged herein has acted under the color of law and is being sued in her individual and official capacity.

30.    **J. Russell George**.  Defendant J. Russell George is an employee of the United States Government as a supervisor or manager for Defendants Michele Uthe and David Perlman in the Arlington, Virginia Office of the Inspector General - United States Department of the Treasury and at all times alleged herein has acted under the color of law and is being sued in his individual and official capacity.

## CAMPAIGN OF CIVIL RIGHTS DEPRIVATION
## AND RETALIATION AGAINST THE PLAINTIFF

31.    On Friday, February 4, 2005, Plaintiff was denied the requested benefit of counsel in a criminal proceeding in the United States District Court, for the Northern District of Illinois, Eastern Division, Honorable James B. Zagel, judge presiding.

32.     Also, on Friday, February 4, 2005, Plaintiff requested from the Court leave to amend Plaintiff's scheduled February 7, 2005, surrender date to the Maximum Security United States Penitentiary located in Terre Haute, Indiana and to be arrested on said date in lieu of an unconstitutional surrender. From the Bench, the Court granted Plaintiff's request to be arrested. *See, February 4, 2005, Report of Proceedings, by reference made a part hereof.*

33.     On February 7, 2005, Plaintiff made himself available to be arrested by the United States Marshal who failed to arrest the Plaintiff because a warrant for said arrest had not been issued or entered by any Court of Law.

34.     On February 14, 2005, a Federal Arrest Warrant was prepared by Defendant Yvette Pearson, Warrant Issuing Clerk of the United States Marshal Service. See, **Exhibit, A,** *attached hereto and made a part hereof as a true and correct copy of said judicially unexecuted warrant.*

35.     Also, on February 14, 2005, Defendant Yvette Pearson, Warrant Issuing Clerk of the United States District Court immediately submitted to the Federal Bureau ("FBI") of Investigations International Warrant Bureau, said warrant without authorization of any judge of the Court **Exhibit A.**

36.     On and after February 14, 2005, Plaintiff's name, identity, personal information and purported warrant were placed on the international file held with the Federal Bureau of Investigations without authorization of a judge of any Court.

37.     Prior and subsequent to February 14, 2005, there has never been any arrest warrant, search warrants or seizure orders, executed by any judge of any court or placed with any state, federal or local law enforcement agency.

38.     On or before April 8, 2005, Plaintiff's name was place on the United States Marshal's list of wanted fugitives under the code name of "Operation Falcon."

10

39.   On or before April 8, 2005, Plaintiff's residence was placed under surveillance by Defendants.

40.   On or about April 8, 2005, certain Defendants went to the gated community of Plaintiff's residence and questioned the gatehouse guards and security management on the whereabouts of Plaintiff.

41.   On April 8, 2005, certain Defendants were advised by the gatehouse guards and security management that the Plaintiff and his wife had left for the day and Plaintiff's residence was unoccupied.

42.   On April 8, 2005, at the approximate hour of 6:00 a.m., Defendants Rehberg, Banos and Marquez placed a ladder on the side of Plaintiff's five (5) story condominium building and along with assistance of other Defendants cut the screen on the second (2nd) floor veranda of Plaintiff's abode and entered Plaintiff's private residence.

43.   On April 8, 2005, Defendants with the assistance of United States Marshal with guns drawn entered Plaintiff's residence, thoroughly searched and ransacked Plaintiff's residence.

44.   On April 8, 2005, Defendants looked under the Plaintiff's mattress.

45.   On April 8, 2005, Defendants looked into Plaintiff's refrigerator and freezer.

46.   On April 8, 2005, Defendants searched Plaintiff's closets.

47.   On April 8, 2005, Defendants looked into Plaintiff's storage area.

48.   On April 8, 2005, Defendants searched Plaintiff's garage.

49.   On April 8, 2005, Defendants interrogated Plaintiff's neighbors regarding the whereabouts of Plaintiff.

11

50.     On April 8, 2005, Defendants located a jewelry box intentionally hidden by Plaintiff between the house plants on top of Plaintiff's seven (7) foot sweater armoire.

51.     On April 8, 2005, Defendants opened the wooden jewelry box and found eight (8) expensive antique and modern collectible gold watches located on top of the Plaintiff's seven (7) foot sweater armoire.

52.     On April 8, 2005, Defendants seized and removed Plaintiff's gold watches from Plaintiff's residence.

53.     Plaintiff did not or has never given Defendants or anyone else permission to enter or to search his home.

54.     On or before April 8, 2005, public records are absent of any arrest warrant for Plaintiff's arrest. See, **Exhibit, C**, *attached hereto and made a part hereof is the Criminal Docket of the Clerk of the United States District Court in relevant parts dated from February 1, 2005, through June 27, 2005.*

55.     On or before April 8, 2005, public records are absent of any Search Warrant for Plaintiff's residence.

56.     On or before April 8, 2005, public records are absent of any written authorization of any seizure order for Plaintiff's property removed from Plaintiff's home.

57.     On or before April 8, 2005, public records are absent of any written authorization given by the Plaintiff allowing for the entry to the Plaintiff's residence; search of the Plaintiff's residence; or any seizure of Plaintiff's property.

58.     On April 8, 2005, Plaintiff telephoned the Village of Hinsdale Police Department to report a residential burglary.

59.     On April 8, 2005, Defendant Rehberg; Defendant Waldren; Defendant Pearson; and Defendant Waldron falsely advised the Village of Hinsdale Police

Department that Plaintiff was a fugitive and that a warrant for his arrest was issued by the federal court on February 14, 2005.

60.    On April 8, 2005, as a result of the Defendants' false representations to the Village of Hinsdale Police Department, the Village of Hinsdale Police Department refused to send a patrol car to the Plaintiff's home to take Plaintiff's complaint for residential burglary.

61.    Based on information and belief Plaintiff was treated with indifference because of his African American race and because of the false representations made by the Defendants.

62.    Based on information and belief, Plaintiff and his wife are the only African Americans residents in the subdivision of Plaintiff's residence.

63.    On April 8, 2005, Defendants through their agents the Village of Hinsdale Police Department and its Chief of Police under the color of law advised the Plaintiff to report to the Village of Hinsdale Police Department and to see only himself or Deputy Police Chief Defendant Kevin Simpson to sign a complaint for residential burglary.

64.    On or about April 10, 2005, Plaintiff sent Defendants a written letter memorializing the fact that the Plaintiff's home had been burglarized, by referenced this letter is attached hereto as **Exhibit D** *and made a part hereof.*

65.    On or after April 10, 2005, Plaintiff sent correspondence to the United States Senate, Judiciary Subcommittee; Senators Richard Durbin and Barack Obama; Congresswoman, Judith Biggett; and DuPage County State's Attorney Joseph Berkett admonishing the same that the Plaintiff's civil rights has been intentionally violated by Defendants and that Defendants have seized or stolen Plaintiff's property and have denied the Plaintiff his right to file a written complaint and police report for theft or

aggravated residential burglary. See "Memorandum of Injustice", *attached hereto as* **Exhibit, D,** *and made a part hereof.*

66.     On and after April 10, 2005, Defendants intentionally interfered with Plaintiff's absolute right to file a criminal complaint for residential burglary.

67.     On and after June 8, 2005, Defendants, specifically Defendant Rehberg caused the Plaintiff to be held in the Cook County Department of Corrections, county jail on a "warrant hold" by misrepresenting to county jail record keepers that Defendants held a federal arrest warrant for Plaintiff's arrest. See **Exhibit A**, *attached hereto and made a part hereof.*

68.     As a result of Defendants' knowingly false representations to Cook County Jail Record Keepers, Plaintiff was knowingly and unlawfully held in county jail on a "warrant hold" from June 8, 2005, through and including April 26, 2006, that Defendants knew or should have known that no warrant of any kind actually existed in law, fact or equity.

69.     Defendants failed to accord Plaintiff his rights to due process.

70.     Defendants failed to accord Plaintiff his rights to equal protection under the law.

71.     Plaintiff has been denied privileges and freedoms guaranteed by the United States Constitution without due process of law.

72.     Defendants' conduct was intentional and calculated to violate the Plaintiff's constitutional rights under the law.

73.     Plaintiff has suffered monetary damages as a result of Defendants' unconstitutional conduct.

74.     Plaintiff has suffered emotional pain and suffering as a result of Defendants' unconstitutional conduct.

75.     Plaintiff has suffered damage to his good name and reputation as a result of Defendants' unconstitutional conduct.

76.     On May 10, 2006, Plaintiff personally went to the Hinsdale Police Department to speak to the Chief of Police regarding his inability to file a police report.

77.     On May 10, 2006, Chief Bloom of the Village of Hinsdale Police Department summoned Non-Defendant, Hinsdale Police Officer Steve Ruban and authorized the same to take a delayed incident report for residential burglary. Said incident report was assigned a case number and listed Defendant Rehberg as a suspect with an estimated loss of property in the sum of twenty three thousand, two hundred, and ninety ($23,290.00) dollars. *See redacted in security and privacy parts, the attached* "Approved" Hinsdale Police Department Incident Report attached hereto as **Exhibit C,** *and made a part hereof.*

78.     Also, on May 17, 2006, Defendants caused a knowingly false follow-up incident report, to be authored, erroneously describing the loss of Plaintiff's property as only one Daniel Richards Men's Wristwatch in the estimated value of thirty-nine hundred ($3,900.00) dollars and stating that based on the Defendants who admitted to being in the Plaintiff's residence because they heard music playing that the "criminal trespass on April 8, 2005, was unfounded" "...and that local law enforcement was suspicious of Plaintiff for the fact that a crime was being reported over a year later."

79.     Also on May 17, 2006, Defendants falsely and intentionally admonished Hinsdale local law enforcement that Defendants had legal authority to be in Plaintiff's residence because there was an active warrant for Plaintiff's arrest.

80.     Also, on May 17, 2006, Defendants falsely and intentionally admonished Hinsdale local law enforcement that Defendants had followed "protocol" by searching Plaintiff's residence and garage without any search warrant and based on the "say so" of

15

certain federal employees. *See May 17, 2006, Hinsdale Police Department Follow-Up Incident Report attached hereto as* **Exhibit C***, by reference made a part hereof.*

81.     On information and belief Defendants' actions were deliberately calculated to deceive the Plaintiff and to deny the Plaintiff his rights secured by the United States Constitution.

82.     On information and belief Defendants' actions violated Plaintiff's rights to due process.

83.     On information and belief Defendants' actions violated Plaintiff's rights to equal protection under the law.

84.     Plaintiff has suffered monetary damages as a result of Defendants' unconstitutional conduct.

85.     Plaintiff has been denied privileges and freedoms guaranteed by the United States Constitution without due process of law.

86.     Plaintiff has suffered emotional pain and suffering as a result of Defendants' unconstitutional conduct.

87.     Plaintiff has suffered damage to his good name and reputation as a result of Defendants' unconstitutional conduct.

88.     Plaintiff has been denied liberty and liberty rights without due process as a result of Defendants' unconstitutional conduct.

89.     Defendants' conduct violated Plaintiff's clearly established constitutional and statutory rights of which Defendants were aware of or reasonably should have been aware of.

90.     There was at all time relevant herein a statute in the United States Code providing, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State...subjects, or causes to be subjected, any citizen of the

16

United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C., Section 1983

91.    As a result of Defendants' misconduct, Plaintiff has suffered loss of employment; loss of business income; extreme humiliation and embarrassment; anxiety; trauma; stress; emotional distress; sleep deprivation; ostracism by former clients; colleagues and business associates; diminished reputation in the community and in business; diminished earning capacity; and impaired Plaintiff's exercise of his constitutional right to free speech and association. Defendants' conduct has permanently and adversely affected Plaintiff's life, career, ministry, family and future.

## COUNT I

## INJUNCTIVE RELIEF

92.    Plaintiff alleges paragraphs one through ninety-one as if alleged herein and continues as follows:

93.    Plaintiff has been harassed and will continue to be harassed unless this Court orders the parties to have no contact with each other outside these legal proceedings or pending further order of court.

94.    Plaintiff is unable to utilize the emergency public resources of the Village of Hinsdale, including police protection as withheld herein and seeks injunctive relief to further the interest of justice and to assure that no harm will come to the African American Plaintiff, his wife, their children or grandchildren.

95.    To grant Plaintiff's request for injunctive relief will further the interest of justice and will not harm any party to this civil rights lawsuit.

*WHEREFORE*, Plaintiff respectfully request that an order for injunctive relief is entered and that all Defendants or their agents or designated representatives are barred

17

from engaging in any contact with the Plaintiff outside of these legal proceedings pending further order of court.

## COUNT II

### VIOLATION OF FOURTH AMENDMENT
### UNITED STATES CONSTITUTION – 42 U.S.C., Section 1983

96.    Plaintiff alleges paragraph one through ninety-five as if alleged herein and continues as follows:

97.    Plaintiff has had his personal property and possessions searched without a warrant, permission or legal authorization.

98.    Defendants have intentionally violated provisions of the United States Constitution which prohibits the search and seizure without a warrant, permission or legal authorization.

*WHEREFORE*, Plaintiff respectfully prays for the following relief:

A.    Defendants are adjudged to have violated or caused the violation of Plaintiff's constitutional rights and each Defendant in their individual capacity are ordered to pay compensatory damages in excess of one million dollars or such greater amount to be determined by the Court;

B.    Plaintiff is awarded exemplary damages;

C.    Plaintiff is awarded punitive damages in excess of five million dollars or such greater amount to be determined by the Court from each Defendant;

D.    Statutory damages as allowed by the law; *and*

E.    Such further relief as authorized by law including court costs and fees and functional equivalent of attorney fees.

## COUNT III

### VIOLATION OF FIFTH AMENDMENT
### UNITED STATES CONSTITUTION -- 42 U.S.C., Section 1983

18

99.    Plaintiff alleges paragraph one through ninety-eight as if alleged herein and continues as follows:

100.    Plaintiff has had his personal liberty restrained without warrant, legal authorization or due process of law.

101.    Plaintiff's access to a public facility in the form of the Hinsdale Police Department was knowingly and intentionally restrained by all of the Defendants.

102.    Defendants have intentionally caused Plaintiff personal damages as a result of their actions and have intentionally violated provisions of the Fifth Amendment of the United States Constitution.

*WHEREFORE*, Plaintiff respectfully prays for the following relief:

A.    Defendants are adjudged to have violated the Fifth Amendment of the United States Constitution and each Defendant is ordered to pay compensatory damages in their individual capacity in a sum in excess of five million dollars or such greater amount to be determined by the Court.

B.    Defendants are ordered to pay exemplary damages;

C.    Defendants are ordered to pay punitive damages in excess of five million dollars or such greater amount to be determined by this Court;

D.    Statutory damages as allowed by law; and

E.    Such other relief as allowed by law including court costs, fees and the functional equivalent of attorney fees.

## COUNT IV

## VIOLATION OF THE EIGHT AMENDMENT
## UNITED STATES CONSTITUTION – 42 U.S.C., Section 1983

103.    Plaintiff alleges paragraph one through one hundred and two as if alleged herein and continues as follows:

19

104.    Plaintiff has been intentionally treated by Defendants in violation of the laws that prohibit cruel and unusual punishment.

*WHEREFORE*, Plaintiff respectfully prays for the following relief:

A.    Defendants are adjudged to have violated the Eight Amendment of the United States Constitution and each Defendant is ordered to pay compensatory damages in an amount in excess of five million dollars or such greater amount to be determined by the Court;

B.    Exemplary damages;

C.    Defendants are ordered to pay punitive damages in excess of twenty-five million dollars or such greater amount as ordered by the Court;

D.    Statutory damages as allowed by law; *and*

E.    Such further relief as allowed by law including court costs, fees and the functional equivalent of attorney fees.

### V.

### VIOLATION OF FIRST AMENDMENT
### THE UNITED STATES CONSTITUTION – 42 U.S.C., Section 1983

105.    Plaintiff alleges paragraphs one through one hundred and four as if alleged herein and continues as follows:

106.    Defendants' conduct was intended to harass, intimidate and retaliate against Plaintiff for his exercise of his constitutionally protected right to freedom of speech. Plaintiff's speech was a substantial motivating factor for Defendants' wrongful conduct.

107.    Plaintiff's speech concerned matters of political public concern and, as such, constitutes the highest degree of speech protected by the First Amendment.

20

108.    Defendants' conduct deprived the African American Plaintiff of his First Amendment right to freedom of speech. The complained-of-conduct by Defendants occurred under the color of state law.

109.    Defendants acted with reckless disregard and with actual malice to deprive Plaintiff of his rights guaranteed under the United States Constitution.

*WHEREFORE*, Plaintiff respectfully prays for the following relief:

A.    Defendants are adjudged to have violated the First Amendment of the United States Constitution and each Defendant is ordered to pay compensatory damages in an amount in excess of five million dollars or such greater amount to be determined by the Court;

B.    Defendants are ordered to pay punitive damages in excess of twenty-five million dollars or such greater amount as ordered by the Court;

C.    Exemplary damages;

D.    Interest on compensatory damages at a rate set by law for Plaintiff's costs including the functional equivalent of attorney fees as authorized by 42 U.S.C., Section 1988; *and*

E.    For such further relief as allowed by law.

## VI

### COUNT SIX
### VIOLATION OF THE FOURTEEN AMENDMENT
### UNITED STATES CONSTITUTION – 42 U.S.C., Section 1983

110.    Plaintiff alleges paragraphs one through one hundred and nine as if alleged herein and continues as follows:

111.    By applying for a police incident report to the Village of Hinsdale Police Department Plaintiff exercised his right under the Due Process Clause of the Fourteenth Amendment.

21

112.   By seeking information *via* the Illinois Freedom of Information Act with the Village of Hinsdale Police Department Plaintiff exercised his right under the Due Process Clause of the Fourteenth Amendment.

113.   By refusing to allow Plaintiff to file an incident report or to condition the filing of a police incident report upon surrendering for a warrantless arrest by Defendants, the Defendants unlawfully retaliated against the Plaintiff for the exercise of his rights under the Due Process Clause of the Fourteen Amendment.

114.   Despite knowing that Plaintiff's constitutional deprivation was motivated by Defendants and other "Operation Falcon" law enforcement participants' desire to retaliate against the Plaintiff for exercising his Due Process right to file a police incident report and all Defendants acquiesced and/or agreed to the deprivation in violation of Plaintiff's Due Process rights under the Fourteenth Amendment and placed unconstitutional conditions on Plaintiff's rights to due process.

115.   Despite knowing that Plaintiff's constitutional deprivation was motivated by Defendants and other "Operation Falcon" law enforcement participants' desire to retaliate against the Plaintiff for exercising his Due Process right to receive an honest and truthful investigate report and all Defendants acquiesced and/or agreed to the deprivation in violation of Plaintiff's Due Process rights under the Fourteenth Amendment.

116.   Despite knowing that Plaintiff's constitutional deprivation was motivated by Defendants and other "Operation Falcon" law enforcement participants' desire to retaliate against the Plaintiff for exercising his Due Process right to seek accurate, honest and truthful information *via* the Illinois Freedom of Information Act and all Defendants acquiesced and/or agreed to the deprivation in violation of Plaintiff's Due Process rights under the Fourteenth Amendment.

117.   The false, malicious, and retaliatory acts of the Defendants have resulted in extreme humiliation and embarrassment to Plaintiff and have diminished his reputation in his residential, business and spiritual community.

118.   The acts of the Defendants have resulted in the denial of Plaintiff's business income and other related benefits, other economic damages, and emotional pain and suffering.

119.   The acts of the Defendants deprived Plaintiff of his Fourteenth Amendment rights which protects Plaintiff's conduct in exercising his due process rights.

*WHEREFORE*, Plaintiff respectfully prays for the following relief:

A.   Defendants are adjudged to have violated the Fourteenth Amendment of the United States Constitution and each Defendant is ordered to pay compensatory damages in an amount in excess of five million dollars or such greater amount to be determined by the Court;

B.   Defendants are ordered to pay punitive damages in excess of twenty-five million dollars or such greater amount as ordered by the Court;

C.   Exemplary damages;

D.   Statutory damages as allowed by law; and

E.   Such further relief as allowed by law including court costs and fees and the functional equivalent of attorney fees as authorized by 42 U.S.C., Section 1988.

## VII

## COUNT SEVEN
## CONSPIRACY (42 U.S.C., Section 1983)

120.   Plaintiff alleges paragraphs one through one hundred and nineteen as if alleged herein and continues as follows:

121.   Defendants acting together and under the color of law, reached an understanding and agreement, engaged in a course of conduct, and otherwise conspired

among and between themselves and with other unnamed and/or unknown co-conspirators, to deprive Plaintiff of his Constitutional rights, and did deprive Plaintiff of his Constitutional rights, as alleged herein, including his rights to be free from retaliation for exercising his right to free speech, as protected by the First Amendment, Due Process and Equal Protection of the laws as guaranteed by the Fourteenth Amendment.

122.    In furtherance of this conspiracy, the individual Defendants committed overt acts as alleged herein, including but not limited to falsely and maliciously investigating, harassing and harming Plaintiff in direct retaliation for Plaintiff's protected First Amendment activities, and in violation of Plaintiff's Fourteenth Amendment Due Process and Equal Protection rights.

123.    Said acts of Defendants were undertaken willfully, maliciously and deprived Plaintiff of his rights under the First and Fourteenth Amendments and 42 U.S.C., Section 1983.

124.    Said conspiracy proximately caused said Constitutional violations and other injuries, including but not limited to pain and suffering, mental anguish, legal expenses, loss of income and loss of use of income as alleged herein.

*WHEREFORE,* Plaintiff respectfully prays for the following relief:

A.    Defendants are adjudged to have conspired to violate Plaintiff's constitutionally protected rights as alleged herein and each Defendant is ordered to pay compensatory damages in an amount in excess of five million dollars or such greater amount to be determined by the Court;

B.    Defendants are ordered to pay punitive damages in excess of twenty-five million dollars or such greater amount as ordered by the Court;

C.    Statutory damages as allowed by law;

D.    Exemplary damages; *and*

24

E.    Such further relief as allowed by law including court costs and fees and the functional equivalent of attorney fees as authorized by 42 U.S.C., Section 1988.

## VIII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

125.    Plaintiff alleges paragraphs one through one hundred and twenty-four as if alleged herein and continues as follows:

126.    The conduct of the individual Defendants as alleged herein were extreme and outrageous, were done intentionally, willfully and wantonly, and/or knowing that there was a high probability that their conduct would cause Plaintiff emotional distress.

127.    As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff was injured and experienced severe emotional distress constituting intentional infliction of emotional distress under Illinois law.

*WHEREFORE,* Plaintiff respectfully prays for the following relief:

A.    Defendants are adjudged to have violated Plaintiff's rights against intentional infliction of emotional distress and each Defendant is ordered to pay in their individual capacity compensatory damages in an amount of five million dollars or such greater amount to be determined by the Court;

B.    Defendants are ordered to pay punitive damages in their individual capacity in an amount of twenty-five million dollars or such greater amount as ordered by the Court;

C.    Exemplary damages;

D.    Statutory damages as ordered by the Court; and

E.    Such further relief as allowed by law including court costs and fees, and the functional equivalent of attorney fees as authorized by 42 U.S.C., Section 1988.

## IX

### COUNT NINE
### EQUAL PROTECTION UNDER THE LAW VIOLATION
### UNITED STATES CONSTITUTION – 42 U.S.C., Section 1983

128.    Plaintiff alleges paragraphs one through one hundred and twenty seven as if alleged herein and continues as follows:

129.    The acts of the Defendants were irrational and wholly arbitrary.

130.    The actual motivation for the above alleged acts were unrelated to legitimate motives but, rather, was motivated by improper motives including but not limited to ill will and personal animus towards the African American Plaintiff. Said treatment of Plaintiff constituted a totally illegitimate animus by Defendants completely unrelated to any legitimate objectives.

*WHEREFORE*, Plaintiff respectfully prays for the following relief:

A.      Defendants are adjudged to have violated Plaintiff's right to equal protection under the law and each Defendant is ordered to pay in their individual capacity compensatory damages in an amount of five million dollars or such greater amount to be determined by the Court;

B.      Defendants are ordered to pay punitive damages in an amount of twenty-five million dollars or such greater amount as ordered by the Court;

C.      Statutory damages as ordered by the Court;

D.      Exemplary damages; and

E.      Such further relief as allowed by law including court costs and fees, including the functional equivalent of attorney fees as authorized by 42 U.S.C., Section 1988.

## X

### COUNT TEN
### FALSE LIGHT

26

131.    Plaintiff alleges paragraph one through one hundred and thirty as if alleged herein and continues as follows:

132.    Under Illinois law, there is a recognized cause of action for false-light invasion of privacy where (1) a party is put in a false light before the public as a result of the Defendants' actions; (2) the false light would be highly offensive to a reasonable person; and (3) the Defendants acted with knowledge that the statements were false or made with reckless disregard for whether the statements were true or false.

133.    Defendants' wrongful statements and conduct cast Plaintiff in a false light before the public and/or his fellow employees, associates, neighbors, his ministry and colleagues by stating that Plaintiff may have filed a false police incident report in retaliation to be arrested; and falsely stating to the public that Plaintiff has a Federal Arrest Warrant for his arrest; or that Plaintiff had no jewelry or a reduced amount of jewelry or property loss had been removed from Plaintiff's residence; and that protocol allowed Defendants as "Operation Falcon" operatives to be in Plaintiff's home.

134.    Defendants' wrongful statements and conduct cast Plaintiff in a false light before the public and/or his fellow employees, associates, neighbors, his ministry and colleagues by stating that Defendants and "Operation Falcon" operatives entered Plaintiff's residence through an opened screen door, when the truth shows that Plaintiff lived on the second floor and Defendants accessed a ladder to the second floor roof of the condominium building and cut the screen to unlock Plaintiff's veranda door at 6:00 a.m., while all of the African American Plaintiff's white neighbors watched in shock and racial indifference.

135.    Defendants knew or acted with reckless disregard as to the truth of their statements and truth behind the false charges, conduct and allegations brought against the African American Plaintiff.

*WHEREFORE*, Plaintiff respectfully prays for the following relief:

A.      That Defendants are adjudged by this Court to have violated Plaintiff's rights prohibiting false-light and each Defendant is ordered to pay in their individual capacity compensatory damages in an amount of five million dollars or such greater amount as ordered by the Court;

B.      Defendants are ordered to pay punitive damages in an amount of twenty-five million dollars or such greater amount as ordered by the Court;

C.      Statutory damages as ordered by the Court; and

D.      Such other relief as ordered by the Court including court costs and fees.

## JURY DEMAND

Plaintiff hereby demands that this matter is tried by a jury.

*Respectfully submitted,*

_____
LAMAR C. CHAPMAN III, Plaintiff, *Pro Se*

**DATED: April 30, 2008**

Non-Attorney, Non-Lawyer
Plaintiff, *Pro Se*
LAMAR C. CHPMAN, *Solo Fides*
Alexander, Cavanaugh & Block, LLC
1314 Kensington Road
Post Office Box 5232
Oak Brook, IL 60523-5232
Telephone (630) 881-1936
Email: lasallecompanies@aol.com

# PLAINTIFF'S EXHIBIT A

Case 1:07-cv-06531   Document 1   Filed

AO 442 (Rev. 6/97) Warrant for Arrest

## United States District Court
### Northern District of Illinois
### Eastern Division

United States of America

**WARRANT FOR ARREST**

v.

Lamar Chapman

Case Number: 04 cr 307-1

To: The United States Marshal
And any Authorized United States Officer

    YOU ARE HEREBY COMMANDED to arrest **Lamar Chapman** and bring him or her forthwith to the nearest magistrate judge to answer a(n)

Indictment    Information    Complaint    X Order of court    Violation Notice
Probation    Violation Petition

charging him or her with:   **Failure to surrender for sentencing**
         **(See Attachment)**

**FILED**
JAN 1 7 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

in violation of Title United States Code, Section(s)

Yvette Pearson Issuing Officer

U.S. Deputy Clerk

Signature of Issuing Officer

February 14, 2005; Chicago

Bail fixed at $

, Judicial Officer

| RETURN |
|---|
| This warrant was received and executed with the arrest of the above-named defendant at |

| Date Received | Name and Title of Arresting Officer | Signature of Arrest Officer |
|---|---|---|
| | | |
| Date of Arrest | | |
| 02/13/06 | SUSAN GARTH G. RATHBONE | |

2006 FEB 14 PM 2:59

UNITED STATES MARSHAL

*Exhibit, A*

Incident No.
2006 - 3682

# Hinsdale Police Dept
### Incident Report

Print Date : 05/18/2007
Print Time : 8:56:10 AM

## Incidents

| CODE | TYPE OF INCIDENT | DATE OCCURRED | DAY OCC | TIME OCC | | |
|------|------------------|---------------|---------|----------|---|---|
| 10610 | BURGLARY | 04/08/2005 - 04/08/2005 | 6 - 6 | 06:30:00 - 07:00:00 | | |
| | | DATE REC | TIME REC | DISP | ARR | COMP |
| | | 05/10/2006 | 13:26:00 | 13:26:00 | 13:42:00 | 14:11:00 |
| | | LOCATION OCCURRED | | CODE | CITY | SEC |
| | | ▮▮▮▮▮▮ | | 796 | Hinsdale | NO |

## Officers

| Code | ON | Badge No | Officers | Agency or Address | Phone |
|------|-----|----------|----------|-------------------|-------|
| 26 | ☐ | CL220 | Leuver, Charles | Hinsdale Police Dept | |

## Persons

| Code | ON | Name (Alias) Business/Organization | Address | DOB | S | R | Phone |
|------|-----|-------------------------------------|---------|-----|---|---|-------|
| CV | ☐ | Chapman, Lamar C | ▮▮▮▮▮▮▮▮▮ | 070853 | M | B | (C) (630) 881-1936 |
| W | ☐ | Rehberd, Garth<br>US Marshals | 219 S Dearborn St<br>Apt/Unit 2444<br>Chicago   IL    60604 | | | | (B) (312) 353-5290 |
| W2 | ☐ | Walden, Margaret<br>US Marshals - Division Supervisor | 219 S Dearborn St<br>Apt/Unit 2444<br>Chicago   IL    60604 | | | | (B) (312) 353-5290 |

## Loss Of Property

| Item | Qty | Brand Name | Model | Type | Description | Est. Value |
|------|-----|-----------|-------|------|-------------|-----------|
| 1 | 1 | Daniel Jean Richard | | Watch | Daniel Jean Richard Mens Wristwatch | $3,900.00 |

| Insurance Company, if known: | Information Source Name:  Chapman |
|------------------------------|-----------------------------------|

## Follow Up

| Date Of Follow Up | Time Of Follow Up |
|-------------------|-------------------|
| 05/17/2006 | 13:26:00 |

## Narrative :

In summary, I spoke to Chief Bloom reference this case. He provided me with copies of the documents that Chapman had sent this department reference his complaint. Chief Bloom related that in previous correspondence Chapman never mentioned that any items were missing.

On 5/11/06 I contacted the Fugitive/Warrants division of the US Marshals Office in Chicago. I was advised Rehberd had been transferred to another division. I explained why I was calling. I spoke to the on-duty warrant officer. I asked if Chapman was still a fugitive. He said he was not sure and checked their records. He said there were no current warrants. I asked if there was an active warrant for Chapman on 4/8/05 that was issued on 2/14/05. I was advised there was reference a case where he was supposed to surrender for a sentence in the federal penitentiary. I located a number to the division which Rehberd was assigned. I spoke to the receptionist in that division. I asked for a number for him and I was provided his cell number. I contacted Rehberd at that number and he remembered speaking with me in 2005 when Chapman was supposed to come in to meet with Chief Bloom. I explained why I was calling and asked if he remembered who the other agents were at the Chapman home on 4/8/06. He said off the top of his head he could not but did say he would have another agent fax me a copy of the report. I explained that Chapman was claiming that the agents on the scene that day took some property from the home. He vehemently denied they took anything. He said they made entry through an unlocked patio door and looked for Chapman. He said he even spoke to his neighbors. I thanked him for his time and he said he would make sure I get their report from that incident. I received a copy of the report and read it. The report indicated that there was an active warrant for Chapman. The report indicated that there were 2 US Treasury Agents with Rehberd and 3 other US Marshals at the apartment. The report indicated entry was made via an unlocked patio door. It indicated the apartment was searched for Chapman and the agents left immediately after they determined he was not there. It was also noted in the report that they secured the apartment. Rehberd indicated in the report that he did speak with Chapman's neighbor. The facts of the report coincided with his brief account of the incident at the home over a year ago. He suggested Chapman was filing this complaint to get back at the US Marshals Office for him getting arrested.

After receiving the report, I contacted the US Marshals Office to speak with a supervisor to verify their protocol and inquire if proper protocol was followed in Chapman's case. I spoke to US Marshal Supervisor Margaret Walden who indicated that

---

Incident No : 2006 - 3682                    ***APPROVED***                    Page   1  Of  2

**Hinsdale Police Dept**

Incident Report

ɪ̲e was familiar with Chapman. I informed her why I was calling and what I was doing. I stated that I wanted to verify that their proper protocol was followed in the case. She said indeed it was. She stated that they verified that was his current address and had 2 Treasury agents with them. She said he also located Chapman's vehicle in the garage. I informed her that I was thankful for her help with the matter. I also told her that I would be contacting Chapman as well.

On 5/17/06 I contacted Chapman via his cell phone. I identified myself and informed him that I was assigned to the case  I started the conversation with Chapman by telling him I spoke to the US Marshals Office in Chicago to verify proper protocol was followed in his case. I also said that I verified that there was an active warrant at the time the Marshals were at his home. Chapman said that was not true. He said that the warrant did not have a judges signature. He said that he went to the federal building on 2/7/05 and waited to be arrested but the Marshals would not arrest him because they did not have a warrant for him. I said that date was irrelevant and the warrant was issued on 2/14/05. I said that I had the correspondence that he sent to Chief Bloom. I explained to Chapman that I was having a problem with the timeliness of the report. I asked why he waited a year to file the report. Chapman said he tried to file the report 4 times as indicated by his correspondence. I said that there was no mention of missing items in the earlier correspondence. I said I find it odd that it is just now that the items are being reported as missing after he had been arrested by the US Marshals Service. Again he said he tried reporting the incident but we would not take a report. I read the correspondence letter dated 4/17/05 to him. I said that we do not make appointments by letter to go to someone's home on a specific date and time to take a report. I explained that if it were me, I would have immediately called the police to file a report when the items were discovered missing. I further explained that on the date that the meeting was scheduled with Chief Bloom, there was an active warrant for him and that was why he declined to come in to the station. I told Chapman that Rehberd and the agents at his home did not commit any crimes. Chapman said that he was taking that up with the US Senate and has filed complaints in Washington DC reference the actions of the US Marshal. Chapman said that the items are missing. I asked him if he was filing the report for insurance purposes. He said he was filing and needed a report number. I told Chapman that there has been numerous burglaries in the past year. He was very surprised. I said that we have no exact time frame when these items went missing. I said with the delay on reporting the items missing the likelihood of the items being recovered are slim to nil. Chapman said he had furnished the initial reporting officer with the serial number for the watch. I said I did not have that information and there was no mention of it in his report. I was provided with the serial number for the Daniel Jean Richard watch. I had TCO Hogan enter the watch into LEADS under LEADS # A06A9667. I said I would check the pawn listings but said there was no guarantee. I again confirmed with Chapman that he had the report number. He said he did and I told him to use that for the insurance.

The criminal trespass on 4/8/05 is unfounded. The US Marshals had legal authority to be there because there was an active arrest warrant for Chapman. I do not have any evidence that a burglary took place or that this is a false report. The fact that a crime was being reported over a year later makes me suspicious as well as the circumstances surrounding the incident. Chapman said himself that it seems as if he was filing this report to get back at the US Marshals although he said he was not using this to do that. I believe that Chapman is filing a false report but I do not have the evidence to support that charge. I am leaving the case open a while to see if the watch can be located to prove this case either way.

Case Pending

# PLAINTIFF'S EXHIBIT B

# DETAINER
## BASED ON FEDERAL JUDGMENT AND COMMITMENT
### United States Marshal
### NORTHERN ILLIOIS
#### (District)



*(Return Address and Phone)*

Please type or print neatly.

TO: Cook County Jail
Chicago, IL 60608

~~Attn: Records~~

DATE: January 13, 2006

SUBJECT: CHAPMAN, Lamar

AKA ___

DOB/SSN: 07/09/1962

REF. # CR# 2005-0004902

USMS #: 16900424

CR # 04 CR 307

Please accept this Detainer against the above-named subject who is currently in your custody. The United States District Court for the NORTHERN  District of ILLINOIS _____ has issued a Judgment and Commitment Order against the subject. The attached Judgment and Commitment Order commits the subject to the custody of the U.S. Attorney General to serve the following sentence of imprisonment:

SIX (6) MONTHS ON COUNT 2 AND THIRTY SIX (36) MONTHS SUPERVISED RELEASE.

Prior to the subject's release from your custody, please notify this office at once so that we may assume custody of the subject for service of his Federal sentence of imprisonment. If the subject is transferred from your custody to another detention facility, we request that you forward our Detainer to said facility at the time of transfer and advise this office as soon as possible. The notice and speedy trial requirements of the Interstate Agreement on Detainers Act do NOT apply to this Detainer.

Please acknowledge receipt of this Detainer. In addition, please provide one copy of the Detainer to the subject and return one copy of the Detainer to this office in the enclosed self-addressed envelope.

| RECEIPT |
|---|
| Date 12 Jan 06 |
| Signed ____ |
| By ____ |
| Title ____ |

Very truly yours,

_(Signature)_

KIM WIDUP
U.S. Marshal

Requested by: GARTH REHBERG

## DEFENDANT'S EXHIBIT, 4

Case 1:07-cv-07232   Document 10   Filed 11/21/2008   Page 52 of 65

**Daniel B. Pritchett**
President



**Randall Petersen**
Chief of Police

## FRANKLIN PARK POLICE DEPARTMENT
9545 West Belmont Avenue
Franklin Park, Illinois 60131
(847) 671-8200

## Livescan correction form

**Attach copy of the arrest report to this form**
Fill out proper correction and fax to offices below

Livescan Chicago (CHRISC)                Livescan State Police (BFI)
Attn: Joe Perfette -- Fax 312 745 6921       Attn: Administrator Fax 815 740 5170

DCN# _016205654_          TCN# _LS/000 7016205654_

Arrestees name as it appears on Livescan arrest report: _CHAPMAN, LAMAR C._

Descriptions of what needs to be changed:
_REMOVE OUT OF STATE WARRANT FROM COUNT ONE -- LEAVE_
_AS CLASS A._
_NOT A WARRANT_

To be corrected from:

(a) _720 ILCS 5.0/21-2     WARRANT # 04CR307-1_

(b) _____

(c) _____

To be corrected to:

(a) _720 ILCS 5.0/21-2_

(b) _____

(c) _____

Respectfully,

_____        _____
Chief of Police                          Police Officer
Franklin Park Police Department



# UNITED STATES MARSHALS SERVICE
## Northern District of Illinois Chicago

### 219 S. Dearborn St
### Chicago, IL 60604

Office: (312) 353-6894, Facsimile: ( 312 ) 353-7494

TO:  Sandra Blake

FROM:  Garth G. Rehberg

DATE:  06/08/2005

NUMBER OF PAGES:   2   EXCLUDING COVER SHEET

COMMENTS: Photos of Lamar Chapman.  If necessary we can respond with the case agent who can make a positive ID of Chapman.

WARNING:  MANY FACSIMILE MACHINES PRODUCE COPIES ON THERMAL PAPER.  THE IMAGE PRODUCED IS HIGHLY UNSTABLE AND WILL DETERIORATE SIGNIFICANTLY IN A FEW YEARS. IT SHOULD BE COPIED ON A PLAIN PAPER COPIER PRIOR TO FILING AS A RECORD.



**FRANKLIN PARK POLICE DEPARTMENT**
9545 West Belmont Avenue
Franklin Park, Illinois 60131
(847) 671-8200

# HOLD
## SUBJECT WANTED ON WARRANT

**NAME:** Lamar Chapman

**SEX:** M    **RACE:** B    **D.O.B.** 07-08-1953

**WANTED BY:**    ☐   **FRANKLIN PARK P.D.**

           ☐   **CCSPD**

           ☒   **OTHER:** U.S. District Court
                           Northern District of Illinois

**WARRANT FOR:** Failure to Surrender for Sentencing

**WARRANT NUMBER:** O4 Cr 307-1

**AMOUNT OF BOND:** NONE      ☒ NO BOND

**ISSUED BY:** Yvette Pearson **D.O.W.** 2-15-05 **DISTRICT:** Federal Warrant

# HOLD
## SUBJECT WANTED ON WARRANT

# PLAINTIFF'S EXHIBIT, C

APPEAL, DENLOW, TERMED

# United States District Court
# Northern District of Illinois - CM/ECF LIVE, Ver 3.1.3 (Chicago)
# CRIMINAL DOCKET FOR CASE #: 1:04-cr-00307 All Defendants

Case title: USA v. Chapman

Date Filed: 03/18/2004
Date Terminated: 10/22/2004

Assigned to: Hon. James B. Zagel

Appeals court case number: 05-3757 7th Circuit

## Defendant (1)

**Lamar Chapman, III**
*TERMINATED: 10/22/2004*

represented by **Lamar Chapman, III**
Alexander, Cavanaugh & Block, LLC
1314 Kensington Road
Post Office Box 5232
Oak Brook, IL 60523-5232
(630)881-1936
PRO SE

**Patrick Alan Tuite**
Arnstein & Lehr, LLP
120 South Riverside Plaza
Suite 1200
Chicago, IL 60606-3913
(312) 876-7100
Email: ptuite@aol.com
*TERMINATED: 10/22/2004*
*LEAD ATTORNEY*

| | | Chapman, III regarding motion for hearing. (emd, ) (Entered: 02/16/2005) |
|---|---|---|
| 02/03/2005 | 40 | VERIFIED MOTION by Lamar Chapman, III for stay of surrender for fourteen (14) days pending retention of replacement counsel; Exhibits. (gma, ) Modified on 12/13/2005 (ym, ). (Entered: 02/03/2005) |
| 02/03/2005 | 41 | NOTICE of Motion for presentment of VERIFIED MOTION by Lamar Chapman, III for stay of surrender for fourteen (14) days pending retention of replacement counsel 40 before Honorable James B. Zagel on 2/4/2005 at 10:15 AM. (gma, ) (Entered: 02/03/2005) |
| 02/03/2005 | 42 | EMERGENCY NOTICE of filing by Lamar Chapman, III regarding MOVERIFIED MOTION by Lamar Chapman, III for stay of surrender for fourteen (14) days pending retention of replacement counsel 40 (gma, ) (Entered: 02/03/2005) |
| 02/03/2005 | 44 | MINUTE entry before Judge James B. Zagel as to Lamar Chapman: The motion 32 to recuse is denied. The motion to vacate to is stricken without prejudice to refiling after defendant is in custody. (meg, ) (Entered: 02/04/2005) |
| 02/03/2005 | 57 | MINUTE entry before Judge James B. Zagel : Defendant's emergency motion for hearing 55 is granted as to Lamar Chapman III (1). No notice (emd, ) (Entered: 02/16/2005) |
| 02/04/2005 | | ORAL MOTION by Lamar Chapman, III to modify the place of surrender from the designated institution for incarceration to the U.S. Marshal Service (meg, ) (Entered: 02/07/2005) |
| 02/07/2005 | 45 | MINUTE entry before Judge James B. Zagel as to Lamar Chapman: Defendant's emergency motion to stay surrender date is denied [40-1] for the reasons stated in open court. Defendant's oral motion to |

| | | modify the place of surrender from the designated institution for incarceration to the U.S. Marshal Service is granted. Defendant to voluntarily surrender to the U.S. Marshal Service for the Northern District of Illinois on 2/7/05 by 2:00 p.m. (meg, ) (Entered: 02/07/2005) |
|---|---|---|
| 02/07/2005 | 47 | VERIFIED MOTION by Lamar Chapman, III to vacate, void or set aside the October 22, 2004 sentence of imprisonment. (gma, ) (Entered: 02/08/2005) |
| 02/07/2005 | 48 | NOTICE of Motion for presentment of VERIFIED MOTION by Lamar Chapman, III to vacate, void or set aside the October 22, 2004 sentence of imprisonment 47 before Honorable James B. Zagel on 2/10/2005 at 10:15 AM. (gma, ) (Entered: 02/08/2005) |
| 02/07/2005 | 49 | EMERGENCY MOTION by Lamar Chapman, III for leave to travel outside of this judicial district. (gma, ) (Entered: 02/08/2005) |
| 02/07/2005 | 50 | NOTICE of Motion for presentment of EMERGENCY MOTION by Lamar Chapman, III for leave to travel outside of this judicial district 49 before Honorable James B. Zagel on 2/7/2005 at 10:15 AM. (gma, ) (Entered: 02/08/2005) |
| 02/08/2005 | 51 | MOTION by United States of America for rule to show cause why defendant's release pending surrender for service of sentence should not be revoked (gma, ) (Entered: 02/08/2005) |
| 02/08/2005 | 52 | NOTICE of Motion by Pravin B. Rao for presentment of ?MOTION by United States of America for rule to show cause why defendant's release pending surrender for service of sentence should not be revoked 51 before Honorable James B. Zagel on 2/10/2005 at 10:15 AM. (gma, ) (Entered: 02/08/2005) |
| 02/10/2005 | 53 | MINUTE entry before Judge James B. Zagel : Motion hearing held on 2/10/2005 and defendant fails to |

| | | |
|---|---|---|
| | | appear. Motion to set aside sentence is stricken. Motion to vacate is stricken. Motion for leave to travel outside the Northern District of Illinois is denied. Government motion fo rule to show cause is granted. Government's oral motion for bench warrant to issue for failure of the defendant to voluntarily surrender is granted. (drw, ) (Entered: 02/14/2005) |
| 02/10/2005 | 54 | MINUTE entry before Judge James B. Zagel as to Lamar Chapman : Enter order for bench warrant to issue for defendant's failure to surrender on 2/7/05 for service of sentence of incarceration. (yap, ) (Entered: 02/14/2005) |
| 06/08/2005 | 58 | NOTICE OF APPEAL by Lamar Chapman, III regarding order on motion for change of venue, order on motion for miscellaneous relief, 44 , order on motion to stay,,, 43 ; Notice of Filing (dj, ) Modified on 6/9/2005 (dj, ). w/ jurisdictional statement Modified on 6/9/2005 (dj, ). Fee Due (Entered: 06/09/2005) |
| 06/08/2005 | 58 | DOCKETING statement by Lamar Chapman, III regarding notice of appeal 58 ; w/notice of appeal (dj, ) (Entered: 06/09/2005) |
| 06/08/2005 | 59 | Transmission of short record as to Lamar Chapman, III to US Court of Appeals re notice of appeal 58 (dj, ) Additional attachment(s) added on 6/9/2005 (dj, ). (Entered: 06/09/2005) |
| 06/13/2005 | 60 | USCA case number as to Lamar Chapman, III 05-2685 for notice of appeal, 58 (kmt, ) (Entered: 06/16/2005) |
| 06/13/2005 | 61 | CIRCUIT rule 3(b) notice (kmt, ) (Entered: 06/16/2005) |
| 06/21/2005 | 62 | USCA fees received $ 255.00, receipt number 10328550 as to Lamar Chapman, III re notice of appeal, 58 : (dj, ) (Entered: 06/22/2005) |

# PLAINTIFF'S EXHIBIT, D

# BEFORE THE UNITED STATES SENATE
# JUDICIARY SUBCOMMITTE
# WASHINGTON, DC

| | |
|---|---|
| *In the matter of:*  ]<br><br>LAMAR C. CHAPMAN III,  ]<br><br>*Petitioner.*  ] | **Senate Hearing Number:**<br><br>Honorable Patrick J. Leahy<br>*Chairman, Committee on the Judiciary* |

## NOTICE OF ADVISEMENT

SERVICE LIST:

**Honorable Member**
**of the United States Senate**

*PLEASE TAKE NOTICE* that on or before October 22, 2004, certain members of the federal judiciary seated on the bench in the United States District Court for the Northern District of Illinois, Eastern Division have conspired to cause the undersigned bodily harm for no other reason than the color of his skin and for filing a previous petition with the United States Senate Judiciary Subcommittee alleging racism, discrimination and other forms of judicial improprieties from the bench. **PETITIONER'S MEMORANDUM ON INJUSTICE** *is attached hereto and herewith respectfully served upon you.*

## PROOF OF SERVICE

LAMAR C. CHAPMAN III, Non-Attorney, Non-Lawyer, Petitioner, *Pro Se*, being first duly sworn upon oath states that he served each and every member of the United States Senate with a true and correct copy of this Notice and all relevant attachments by first class United States Mail, properly addressed and mailed to the Dirksen Senate Office Building, Washington, DC 20510 and mailing the same with proper postage prepaid from the US Postal Facility located on Adams and Dearborn Streets, Chicago, Illinois on Monday, April 18, 2005 before the hour of 5:00 PM.

_____
LAMAR C. CHAPMAN III, Petitioner, *Pro Se*

Lamar C. Chapman III
1314 Kensington Road
Post Office Box 5232
Oak Brook, Illinois 60523-5232
Telephone (877) 527-2526
Facsimile (800) 706-5373
Email: lasallecompanies@aol.com

# MEMORANDUM ON INJUSTICE
## *A Federal Hate Crime From the Bench*
◆

## Fix the Case and
## Assassinate The Whistle Blower…

Mr. Chapman knew that when he called the North Shore Police Department to have an uninvited and criminally trespassing US Justice Department employee removed from his client's place of business that there would be a consequence for his actions.

In retaliation, just two weeks later, Mr. Chapman was fraudulently indicted for signing his very own name on two letters he had authored seven years prior thereto (*outside the statute of limitations*) and later sentenced to a maximum security federal penitentiary for six months only because a historically racist federal employee *"who is a smart judge with a history of stretching the law for his political benefit"*(see Google.com – James B. Zagel) wanted to make a "political" impression on Mr. Chapman.

Today, Mr. Chapman is facing his toughest challenge in disposing of the fraudulent, morally bankrupt, unlawful practices and procedures of certain members of the federal bench sitting in Chicago, Illinois. It is clear that Mr. Chapman signed *his* very own name to the documents. However, it is also clear that this common procedure that each one of us engages in on a routine basis is not criminal conduct at all.

Although there are no bases for federal jurisdiction or for any criminal indictment, Mr. Chapman retained the best of the best to represent him.

This "white collar crimes" lawyer is actually the former colleague of the presiding federal judge - both are believed to be *"Rat Pack"* fraternity members. Head signals were repeatedly sent between the two of them during Mr. Chapman's hearings. (*Court Reporters cannot record head signals.*) Mr. Chapman's seasoned and highly experienced $500.00 per hour counsel made more than twenty-five documented elementary errors in this one count criminal proceeding. The fix was on!

Mr. Chapman asked his lawyer to withdraw from the case. To vacate the unconstitutional sentence Mr. Chapman filed a claim for ineffective-assistance-of-counsel. The trial court judge struck the filing and admonished Mr. Chapman to *"file it again after you've been imprisoned."*

Using the court as his personal weapon, Judge James B. Zagel refused to allow Mr. Chapman a meager four (4) day extension of time to retain new criminal counsel. The constitution which guarantees rights to assistance of counsel *before* imprisonment has been intentionally violated. Several federal judges have violated the law by refusing to exercise their charter and legal obligation to intercede in this unfortunate situation. The Assistant United States Attorney who originally brought the invalid indictment has been removed from the case.

Mr. Chapman has done nothing wrong! He is the owner of several professional proprietary pseudonyms or *"marketing names."* With court knowledge and approval he has used these marketing identities for the last twenty-years. *After all, someone has to sign the names of Ronald McDonald, Betty Crocker, Mrs. Butterworth and Uncle Ben. The late Pope used the name John Paul II as his spiritual pseudonym. Tiger Woods is actually Albert Woods Says Chapman.*

In fact, the Honorable Milton I. Shadur, Senior Judge for the United States District Court in a civil case involving one of Mr. Chapman's companies found in 1986 that Mr. Chapman had not engaged in fraudulent or deceptive practices by engaging in the customary use of *"marketing names"* in the normal course of business. Judge Shadur further found Mr. Chapman to be *"ingenious."*

Although what Mr. Chapman did is no where near illegal and is in fact authorized by the Uniform Commercial Code (federal law), the presiding judge who refused to disqualify himself, stated from the bench

1

that *"its Mr. Chapman's writing that brings him before the court in the first place. And that the court has sentenced Mr. Chapman to six (6) months of [maximum security] imprisonment to make an impression upon him."* Personal motives and retaliation are unlawful before the bench - Says Chapman.

Mr. Chapman's surrender date was set by James B. Zagel for February 7, 2005. However, Mr. Chapman has requested and Judge Zagel has granted his request for the United States Marshall to arrest him on that day instead of his consensual surrender.

Mr. Chapman has named the government in a multi-count civil rights lawsuit that is now pending in Washington, DC. In retaliation, Judge Zagel in Chicago entered an order of court prohibiting Mr. Chapman from traveling to Washington, DC. Contrary to the United States Constitution Mr. Chapman's meaningful access to the federal court is once again being denied.

In response to the government's requirement to answer Mr. Chapman's Verified Civil Rights Complaint filed in Washington, DC, certain federal employees are immorally rushing and anxiously attempting to have Mr. Chapman swept off the streets before the government's April 15, deadline to answer his civil rights charges.

On April 8, 2005, just one week before the government's deadline to answer, the United States Marshall went to Mr. Chapman wife's gated residence located in a historical and prestigious community while she was not home; picked the locks to gain entrance; and proceeded to search and ransack the residence without any search warrant or legal authority.

Thereafter, the deputy United States Marshall telephoned Mrs. Chapman at here office to boost about their immoral conduct. Two hours later, these same federal employees went to Mr. Chapman's adult daughter's upscale home in Aurora, Illinois and repeated the same unconscionable conduct while her two infant babies cried.

Unless the United States Court of Federal Claims in Washington, DC, Honorable Charles Lettow, judge presiding grants Mr. Chapman's emergency motion for injunctive relief, then Mr. Chapman will be unavailable to prosecute his claim (*the government will win by default*). With no criminal record or history of violent background, Chapman will begin serving a six (6) month (death) sentence in the maximum security federal penitentiary located in Terre Haute, Indiana.

You see, just days before his unlawful indictment, Mr. Chapman was once again warned by a long-time member of the Chicago Bar Association that if he *"didn't leave the judges alone that they would kill him."*

Mr. Chapman verily believes and has reasons to believe that his hour has finally come. He believes that he has been successfully isolated by evil men and women in honorary positions of authority for no other purpose then to effectuate his assassination. *"He says that someone on the inside will get the job done!"*

November 2004, marked the twentieth anniversary since civil rights advocate; legal activist; *"prolific litigator;"* and wealthy businessman L. Christopher Chapman III first walked into a courtroom. Mr. Chapman was a defendant in a civil case where his bank was trying to wiggle its way out of a low mortgage interest rate.

You may remember in the eighties when interest rates shot up to 15 and 16 percent and the country was in a deep recession. Mr. Chapman's neighborhood of newly constructed upper middle class immaculate homes had for sale signs popping up all over the place. Mr. Chapman thought that it was either "white flight" or that all of the young executives were being relocated and had to sell their homes. This was neither the case.

All of these newly constructed middle class homes carried a 7.9 percent interest rate at a time when the banks could get 15 percent. The bank had a plan. By refusing to accept a home owner's mortgage payments, then after four months of non-payment the bank could successfully foreclose on the home, force the homeowner into a judicial sale, get out from under its low interest rate loan, sale the homeowner's house, and then loan the money out again at the new higher interest rate.

The practice came to an abrupt halt and ended when the bank got to Mr. Chapman's custom built home.

2

After litigating for more than eleven uninterrupted years with one of the biggest financial institutions in the United States, Mr. Chapman was successful in stopping the bank's unethical practice.   It should be mentioned that Mr. Chapman is a "lawyer by legal definition."   Mr. Chapman has never had any aspiration to practice law or any formal training in the practice of law.

The federal and state courts have praised Mr. Chapman for his courtroom practice, legal writing, natural ability at litigation and his legal "genius." One federal judge writes *"that Mr. Chapman is the best pro se practitioner to ever come before the court."*

In an attempt to forewarn Mr. Chapman's legal opponents who may be unfortunate enough to come up against him in the courtroom, the court has published a telegraphic written opinion classifying Mr. Chapman as a *"prolific litigator."*

Mr. Chapman has seen a lot of courtroom and judicial injustice in his twenty-one years of front line experience at disposing of the derivative litigation stemming from that first lawsuit.

His courier brokerage business was being litigated out of existence.   Mr. Chapman fired his staff of lawyers, filed papers on behalf of himself as a stock-holder of his own company and won the lawsuit and regained total control of his company. Lamar Chapman had litigated against and was victorious against one of the largest and "most prestigious" law firms in Chicago.

Chapman's unrelenting and impeccable investigative skills turned up more than 133 cases of judicial fraud between a state court judge and a lawyer for a downstate bank. The judge was removed from the bench and retired to avoid criminal prosecution.   The *"downstate Illinois"* presiding judicial officer sent Mr. Chapman a message saying that the *"Nigger Has Forgotten His Place and that He Wanted Chapman out of His Building."*

Mr. Chapman was warned that if he came back into that courthouse that he would be sent to jail. That didn't stop Chapman.

On the eve of Mr. Chapman's sixteenth wedding anniversary, he walked into that downstate courthouse at 9:00 a.m., and by 4:00 p.m., he was on his was to county jail for direct criminal contempt of court.   Mr. Chapman did nothing more than file papers (subpoena *duces tecum*) with the Clerk of the Court properly requesting bank records of a party not before the court.

The problem here is that this bank was owned by a prominent local politician; a member of *"The Rat Pack;"* and the Illinois Banking Commissioner.

While in jail he was stripped of all of his clothes by jail officials, given unknown injections of medication against his will and spiritual beliefs and even had a metal shank inserted through the tip of his penis. Hoping to get Chapman raped, hurt or violated while in jail for that one day, he was sent to the most violent division of the county jail – the no bond division.   Mr. Chapman says that God had another plan!

The worse of the worse, in the worse place you would ever want to be, these young men saw Mr. Chapman's predicament for what it really was - *"The wheels of hate and injustice rolling the way its been established to roll – downhill, against the people who needs justice the most*!   - Says Chapman.

Upon release from that one day stay in the county jail, Mr. Chapman went right back into that downstate courthouse.  The court records and public records will show that less than thirty days after his unlawful incarceration and official mistreatment the judge who said that the *"Nigger has forgotten his place,"* died from an over dose of insulin (August 4, 1991) while he was on vacation with his family.  The fact that this date was also Lamar Chapman's youngest daughter's birthday must have been a sign to Mr. Chapman that his call was sanctioned by our heavenly Father through the spiritual doctrine known as *"Angelic Coverage."*

Lamar Christopher Chapman's "tortuous peregrination," in the state court, uncovered a *"Nigger by the Pound"* contest. This was a racially motivated immoral sport to see who could lock up the most number of black people in a single week.

Chapman reported his findings to state court authorities. Mr. Chapman's report to the Illinois Judicial Inquiry Board caused the board to terminate all of the state court

judges involved or the state court judges, law clerks and assistant state's attorneys who refused to get involved and who decided to look the other way.

On the grounds of *"official misconduct"* Governor George Ryan expunged the criminal contempt of court record of Mr. Chapman and expunged the criminal records of more than 249 other black people. This racially motivated *"official misconduct"* formed the basis of Governor George Ryan placing a moratorium on the death penalty in the State of Illinois, citing *"racial unfairness and moral issues"* – a death penalty moratorium that remains in place even today.

Mr. Chapman further believes that his lobbying in 1998 to the Clinton Administration to place more African-Americans on the bench in the district court and the Court of Appeals in Chicago or his verified complaint filed with the United States Senate Judiciary Subcommittee on Oversight of the Court alleging racial discrimination, misconduct and judicial impropriety may be the real reasons behind this unfortunate situation. *This could very well have an impact on who will be next to be seated on the United States Supreme Court.* - Says Chapman.

Mr. Chapman further believes that it is not his desire to be a *"legal vigilante."* However, he says that our country is quickly becoming a Nation of silent onlookers who remain silent in the face of injustice. He adds that he has never been a *"silent onlooker."* I love the people of the world so much that I have to speak out against hatred and injustice. He could very easily say that our politicians are paid to do what he has done. Instead, he says: *That when the Lord calls you answer. You do not get to choose what divine assignment you will accept.*

*"This has been my precious and unselfish twenty-one year ministry. There comes a time in every man's life when we must stop thinking only about ourselves and start thinking about the young people who must follow in our foot steps. This is that time in my life. I do what I do for the Kingdom. That includes all of us – past, present and future, young, and old, white or black. It doesn't matter! Honoring our heavenly*

*Father and the purpose for my existence, I have no choice but to do what I've been called to do! God created me for this time.*

*It is no accident that the United States Senate has proclaimed that the "federal judiciary has run amuck". Judges have taken on the God-like and unconstitutional authority of telling the people of this great Nation who will be our next president and even who is valuable enough to get to live or die in our society. Our system of checks and balance is not working. The court is out of order! God Help Us All* - Says Chapman.

Mr. Chapman is a self-proclaimed "cheerful giver with a sincere desire to love" and says that there is nothing that these evil men, women and employees of the public can do to him to make him stop loving them.

By the way, Lamar C. Chapman III is a proud grandfather, family man, author, successful African-American businessman, alumnus of the US Naval Academy and recipient of a Presidential Appointment, Congressional Nomination, Gubernatorial Military Commission and Judicial Appointment. He has served this nation at the state, federal, county and municipal levels of government. He is also a National Defense Medal Recipient (*December, 1971*).

Mr. Chapman is managing director and chief business counsel of an international business advisement firm with prominent, wealthy and well-known clients doing business on all six continents. His professional concentration is business development, structure, asset management and protection.

He is a former undefeated featherweight boxing champion at the US Naval Academy. As a child he had to fight his way out of the Chicago Housing Projects - Cabrini Green and the Robert Taylor Homes. Chapman says that his proudest moment is when he answered the Call (*July 11, 1991*) of his heavenly Father. Mr. Chapman is spiritually grounded and driven. He believes that the "Fight for Freedom" started by Moses some 3000 years ago continues even today. Quoting the late Dr. Martin Luther King, Jr., Mr. Chapman says: *"That a man who goes to jail for something that he believes in, that jail sentence is his Badge of Honor!"*◆

4

Mr. Chapman is currently completing his manuscript on the Uniform Marriage Agreement ® which prohibits the Courts and our elected officials from altering the United States Constitution for the specific purpose of "social exclusion" or for depriving a select group of citizens their federally protected rights which may or may not include same sex marriage.

For more information, please write: Lamar C. Chapman III, LaSalle Companies, 1314 Kensington Road, Post Office Box 5232, Oak Brook, Illinois 60523-5232, Fax (800) 706-5373, Telephone (877) 527-2526, Email: lasallecompanies@aol.com  No rights reserved.  April 8, 2005.

cc:

United States Senate
 And Judiciary Subcommittee
United States Congress
 And Judiciary Committee
Honorable Charles P. Lettow
United States Court of Federal Claims
United Nations – Committee on Human Rights
Du Page County Sheriff
Hinsdale Police Chief
Oak Brook Police Chief
Associated Press
American Civil Liberties Union

5

# EXHIBITS

# ALEXANDER, CAVANAUGH & BLOCK, LLC

LIABILITY MITIGATION™ • SURROGATELITIGATION™ • ASSET RE-APPROPRIATION™ • LITIGATION FUNDING & BUSINESS COUNSEL™

*Business Counsel - For The Business of Life!®*

1314 Kensington Road
Post Office Box 5232
Oak Brook Illinois 60523-5232
Toll Free Number (877) 31-BLOCK
Writer's Direct Number (630) 881-1936
Facsimile Toll Free Number (800) 706-5373
E-mail: acblock.com

*April 10, 2005*

**FACSIMILE DELIVERY**

Honorable Patrick J. Leahy
Member of the United States Senate
Chairman, Committee on the Judiciary
Dirksen Senate Office Building
Washington, DC  20510

**RE:  United States Senate – Petitioner's Memorandum on Injustice**

Dear Senator Leahy:

A race crime from the bench is the most serious offense that can be committed by a life-time appointed member of the federal judiciary.

Senator Leahy, I believe that the allegations, death threats and other improprieties by certain members of the United States District Court for the Northern District of Illinois, Eastern Division as set forth in the attached Memorandum on Injustice would warrant your attention and the full attention of the United States Senate and the United States Congress.

The undersigned is duly prepared to testify under oath to these and other allegations at anytime.  Thank you for your time, effort and professional consideration.

*Respectfully yours,*
ALEXANDER, CAVANAUGH & BLOCK, LLC

L. CHRISTOPHER CHAPMAN III, *Solo Fides* ™
Managing Director – Chief Business Counsel

LCIII:dv
Enclosures – as stated

cc:  The United States Senate
      The United States Congress
      The United States Justice Department - Office of the Inspector General

*Chicago, New York, San Francisco, Los Angeles, Detroit, Atlanta, Milwaukee, Houston, Portland, Tulsa, Washington, D.C., Philadelphia, Miami, Pittsburgh, Cleveland, Baltimore, Indianapolis, Memphis, Louisville, St. Louis, Kansas City, Buffalo, Minneapolis, Cincinnati, San Antonio, Phoenix, Seattle, New Orleans, Orlando, Denver, Toronto, Ontario, Canada and Worldwide Affiliates*

www.acblock.com

**A LA SALLE COMPANY**
*www.lasallecompanies.com*

# ALEXANDER, CAVANAUGH & BLOCK, LLC

LIABILITY MITIGATION™ • SURROGATE LITIGATION™ • ASSET RE-APPROPRIATION™ • LITIGATION FUNDING & BUSINESS COUNSEL™

*Business Counsel - For The Business of Life!®*

1314 Kensington Road
Post Office Box 5232
Oak Brook Illinois 60523-5232
Toll Free Number (877) 31-BLOCK
Writer's Direct Number (630) 881-1936
Facsimile Toll Free Number (800) 706-5373
E-mail: acblock.com

*April 10, 2005*

**FACSIMILE DELIVERY**

Chief Bradley Bloom
Hinsdale Police Department
121 Symonds Drive
Hinsdale, Illinois 60521

**RE: Garth Rehberd – Criminal Trespass to Property**

Dear Chief Bloom:

As Attorney-of-Fact for Mrs. Vanessa M. Chapman and The LaSalle Trust, BT the undersigned has been authorized to inform you that this letter along with all attachments shall serve as the undersigned's complaint for criminal trespass to the property belonging to Vanessa M. Chapman and The LaSalle Trust, BT by the above-named individual.

Please contact the undersigned if you have questions, comment or other input. Thank you.

*Very truly yours,*
ALEXANDER, CAVANAUGH & BLOCK, LLC

L. CHRISTOPHER CHAPMAN III, *Solo Fides* ™
Managing Director / Chief Business Counsel

LCIII:dv
Enclosures – as stated

cc: Honorable Charles Lettow – United States Court of Federal Claims – Washington, DC
Chief Thomas Sheahan – Oak Brook Police Department
Graue Mill Security

Facsimile Delivery Number (630) 789-6278

---

*Chicago, New York, San Francisco, Los Angeles, Detroit, Atlanta, Milwaukee, Houston, Portland, Tulsa, Washington, D.C., Philadelphia, Miami, Pittsburgh, Cleveland, Baltimore, Indianapolis, Memphis, Louisville, St. Louis, Kansas City, Buffalo, Minneapolis, Cincinnati, San Antonio, Phoenix, Seattle, New Orleans, Orlando, Denver, Toronto, Ontario, Canada and Worldwide Affiliates*

www.acblock.com

**A LA SALLE COMPANY**
*www.lasallecompanies.com*

# ALEXANDER, CAVANAUGH & BLOCK, LLC

LIABILITY MITIGATION™ • SURROGATE LITIGATION™ • ASSET RE-APPROPRIATION™ • LITIGATION FUNDING & BUSINESS COUNSEL™

*Business Counsel - For The Business of Life!®*

1314 Kensington Road
Post Office Box 5232
Oak Brook Illinois 60523-5232
Toll Free Number (877) 31-BLOCK
Writer's Direct Number (630) 881-1936
Facsimile Toll Free Number (800) 706-5373
E-mail: acblock.com

April 9, 2005

**FACSIMILE DELIVERY**

Officer Garth Rehberd
United States Marshall
Dirksen Federal Building
219 South Dearborn Street, 15th Floor
Chicago, Illinois

> RE:  **Criminal Trespass to Property**
> **Vanessa M. Chapman and The LaSalle Trust, BT**

Dear Officer Rehberd:

As business counsel for Vanessa M. Chapman and The LaSalle Trust, BT the undersigned is hereby authorized to correspond with you regarding the above-referenced matter and to memorialize the facts surrounding your unlawful entrance upon the property situated at ███████████████████████████████████████
███████████████████████████████

Mr. Rehberd, specifically, on April 8, 2005, at the approximate hour of 6:06 a.m., you caused the front door lock on the above-referenced property to be manipulated to accommodate your entrance and the entrance of at least five (5) other of your colleagues and federal employees. Upon your entrance in Mrs. Chapman's unoccupied residence, you searched the premises including but not limited to going through the personal belongings of Mrs. Vanessa M. Chapman and removing the mattress from her bed.

Officer Rehberd, you are and were fully aware of the fact that prior to your unauthorized entrance upon the residence of Mrs. Chapman that in accordance with public records held in the Office of the Du Page County Recorder of Deeds that said residence is wholly owned by Vanessa M. Chapman and The LaSalle Trust, BT.

---

*Chicago, New York, San Francisco, Los Angeles, Detroit, Atlanta, Milwaukee, Houston, Portland, Tulsa, Washington, D.C.,
Philadelphia, Miami, Pittsburgh, Cleveland, Baltimore, Indianapolis, Memphis, Louisville, St. Louis, Kansas City, Buffalo,
Minneapolis, Cincinnati, San Antonio, Phoenix, Seattle, New Orleans, Orlando, Denver, Toronto, Ontario, Canada
and Worldwide Affiliates*

www.acblock.com

**A LA SALLE COMPANY**
*www.lasallecompanies.com*

**ALEXANDER, CAVANAUGH & BLOCK, LLC**

**Garth Rehberd**
**April 9, 2005**

**Page II**

Please be advised that an accounting will be completed within the next five (5) days to establish the actual amount of damages to Mrs. Chapman's residence and to establish the identity and value of any missing property allegedly taken from the premises.

This correspondence shall also serve to enhance the previously filed formal complaint filed with the United States Justice Department, Office of Civil Rights and Office of the Inspector General and shall further serve as a police report herewith filed with the Hinsdale Illinois and Oak Brook Illinois Police Departments.

Mr. Rehberd, if the foregoing does not accurately and fairly memorialize your conduct regarding the residential property of Vanessa M. Chapman and The LaSalle Trust, BT on April 8, 2005, then please set forth in writing and with specificity any and all statements and allegations that may be contrary to your recollections of the facts within ten (10) days from the first date listed herein. Otherwise the undersigned will have the right to accept this memorialization as true and correct.

You may direct your correspondence to the attention of the undersigned at the first address listed herein. Thank you for your time, effort and professional consideration.

Very truly yours,

**ALEXANDER, CAVANAUGH & BLOCK, LLC**

**L. CHRISTOPHER CHAPMAN III**, *Solo Fides* ™
Managing Director – Chief Business Counsel

LCIII:dv
Enclosures – Bio
　　　February 1, 2005 Letter to Marshall Widup
　　　Memorandum on Injustice

Officer Garth Rehberd *via* Facsimile Delivery Number (312) 353-9491- Eleven Pages w/o a cover page

cc:

Honorable Charles J. Lettow – United States Court of Federal Claims
United States Justice Department on Civil Rights – Washington, DC
United States Senate Judiciary Subcommittee *via* Overnight Delivery
Officer Bradley Bloom – Police Chief, Hinsdale Police Department, Facsimile Number (630) 789-6278
Officer Thomas Sheahan – Police Chief, Oak Brook Police Department, Facsimile Number (630) 954-4112