

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| LAMAR C. CHAPMAN III, | **Case Number 1:07-cv-06531** |
| *Plaintiff,* | |
| -vs- | Honorable Ruben Castillo, *Judge Presiding* |
| THE UNITED STATES MARSHAL, for the NORTHERN DISTRICT OF ILLINOIS; KIM WIDUP, *in his individual and official capacity*; GARTH G. REHBERG, a/k/a "The Hammer" *in his individual and official capacity*; UNKNOWN DEPUTY MARSHALS for the UNITED STATES MARSHAL GREAT LAKES FUGITIVE RECOVERY UNIT; DAVID PEARLMAN; MICHELE UTHE; *and* J. RUSSELL GEORGE, *in their individual capacity,* | Honorable Sidney I. Schenkier *United States Magistrate*  *Civil Rights Lawsuit 42 United States Code Sections, 1983, 1988, et al.*  Previous Case Number: 07–cv-2174 |
| *Defendants.* | |

**F I L E D**

JUL 1 6 2008 YM

Jul 16. 2008

MICHAEL W. DOBBINS

CLERK, U.S. DISTRICT COURT

## NOTICE OF FILING

TO:
William W. Dobbins
Clerk of the Court
Eastern Division
Everett McKinley Dirksen
United States Courthouse - 20th Floor
219 South Dearborn Street
Chicago, IL 60604

Patrick J. Fitzgerald, Esq.
United States Attorney
c/o Jonathan C. Haile, Esq.
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-2055

*PLEASE TAKE NOTICE* that on Wednesday, July 16, 2008, Plaintiff filed with the Clerk of the Court **PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION TO DISMISS AND SUBSTITUTION,** *as served upon you herewith.*

## PROOF OF SERVICE

LAMAR C. CHAPMAN III, Non-Attorney, Non-Lawyer, Plaintiff, *Pro Se*, being first duly sworn and under oath, and in consideration of the penalties of perjury states that he served this Notice and all relevant attachments on the above-named parties or their designated Representative *via* first class U.S. Mail, addressed as indicated and mailed with proper postage prepaid from the United States Postal Facility located on Adams and Dearborn Streets, Chicago, Illinois 60604 on Wednesday, July 16, 2008, before the hour of 5:00 PM.

_____
LAMAR C. CHAPMAN III, Plaintiff, *Pro Se*

1

**DATED: July 16, 2008**

Non-Attorney, Non-Lawyer
Plaintiff, *Pro Se*
LAMAR C. CHAPMAN III, *Solo Fides*
Alexander, Cavanaugh & Block, LLC
1314 Kensington Road
Post Office Box 5232
Oak Brook, IL 60523-5232
Telephone (630) 881-1936
Email: lasallecompanies@aol.com



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LAMAR C. CHAPMAN III,  ]
      ]
      *Plaintiff,*   ]
      ]
   -vs-      ]
      ]
THE UNITED STATES MARSHAL,  ]
for the NORTHERN DISTRICT OF  ]
ILLINOIS; KIM WIDUP, *in his individual*  ]
*and official capacity*; GARTH G.  ]
REHBERG, *a/k/a "The Hammer" in his*  ]
*individual and official capacity*;  ]
UNKNOWN DEPUTY MARSHALS for  ]
the UNITED STATES MARSHAL  ]
GREAT LAKES FUGITIVE RECOVERY  ]
UNIT; DAVID PEARLMAN; MICHELE  ]
UTHE; *and* J. RUSSELL GEORGE, *in their*]
*individual capacity,*  ]
      *Defendants.*  ]

**Case Number 1:07-cv-06531**

Honorable Ruben Castillo,
*Judge Presiding*

Honorable Sidney I. Schenkier
*United States Magistrate*

*Civil Rights Lawsuit*
*42 United States Code*
*Sections, 1983, 1988, et al.*

Previous Case Number: 07–cv-2174

# FILED

JUL 1 6 2008  YM
Jul 16, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## PLAINTIFF'S RESPONSE TO DEFENDANTS'
## RENEWED MOTION TO DISMISS

*NOW COMES PLAINTIFF*, Lamar C. Chapman III, *Solo Fides*, Non-Attorney,

Non-Lawyer, *Pro Se* and for a Response to Defendants' Second and Renewed Motion to

Dismiss, states as follows:

### INTRODUCTION

The courts will grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss if "it is

impossible [for the plaintiff] to prevail "under any set of facts that could be proved

consistent with [his] allegations.'" See, Albiero v. City of Kankakee, 122 F. 3d 417, 419

(7th Cir. 1997) and Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In reviewing the

plaintiff's complaint, the court must accept all well-pleaded factual allegations in the

complaint as true, and draw all reasonable inferences therefrom in the light most

1

favorable to the plaintiff. See, <u>Guiterrez v. Peters</u>, 111 F. 3d 1364, 1368-69, (7th Cir. 1997).

On June 16, 2008, certain Defendants, United States Marshal's Service; Kim Widup; Garth Rehberg, Michele Uthe; David Perlman; and J. Russell George through their attorney, Mr. Patrick J. Fitzgerald, Esq., United States Attorney and Assistant United States Attorney Mr. Jonathan C. Haile, Esq., moved to substitute the United States as the defendant and to dismiss all claims for lack of jurisdiction, failure of service of process; failure to state a claim; qualified immunity; statute of limitations; and because the claims are inconsistent with the unrepresented Plaintiff's ill-advised plea bargain or criminal conviction.

The Seventh Circuit has admonished and teaches us that to insure that *pro se* complaints are given fair and meaningful consideration they are liberally construed, however inartfully pleaded. And the *pro se* complaint is held to less stringent standards than a complaint that is drafted by an attorney. See, <u>Talley v. Lane</u>, 13 F. 3d 1031 (7th Cir. 1994), and <u>Gale v. United States Gov't.</u>, 786 F. Supp. 697 (N.D. Ill. 1990).

Accordingly, the Defendants' renewed and combined motion is not supported by well-settled law and must be rejected by this Honorable Court.

## I

### Rebuttal Argument
### <u>Plaintiff's Background Narrative</u>

Defendants' background narrative self-servingly encapsulates extraneous and needless information, opinion and conjecture to camouflage the legitimate fourth (4th) amendment and fourteenth (14th) amendment civil rights issues rightfully pending before this Honorable Court.

The unrepresented, *pro se*, Plaintiff's civil rights complaint is "cut and dried" in accordance with previous holdings of the United States District Court for the Northern

2

District of Illinois, Eastern Division. See, Chapman vs. Gasperec, 1997 WL 112821 (N.D. Ill. 1997), - quoting, the Honorable James B. Moran, Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division.

The unrepresented, Plaintiff's First Amended Civil Rights Complaint is lucid, and clearly articulates Defendants' wholesale violations of the distinguished, African-American, decorated, retired Naval Officer's, fourth (4th) and fourteenth (14th) amendments rights as secured and protected and not subject to discretionary suspension or review by the United States Constitution.

In summary, the Defendants conspired to intentionally violate the Plaintiff's civil rights when the Plaintiff's residence was broken into and burglarized by the Defendants and the Defendants came upon the Plaintiff's residence without any warrants whatsoever – search warrant or arrest warrant as prohibited by the Fourth (4th) and Fourteenth (14th) Amendments of the United States Constitution. Defendants burglarized Plaintiff's residence and removed an antique gold wristwatch collection valued in excess of thirty-two thousand ($32,000.00) dollars from Plaintiff's home without any order of court or legal authorization. See, Exhibit A, *attached to Plaintiff's civil rights complaint as a May 17, 2006, Hinsdale Police Incident Report, by reference made a part hereof.* And the unrepresented, Plaintiff's Fourteenth Amendment Rights to due process were clearly violated by the Defendants because the Defendants effectuated a criminal proceeding against the African-American, politically outspoken Plaintiff to unlawfully determine the rights to property as strictly prohibited by the United States Constitution.

The United States Court of Appeals for the Seventh Circuit has admonished this Honorable Court to take the allegations in Plaintiff's complaint as true in entertaining Defendants' Motion to Dismiss. See, Lamar C. Chapman III vs. The Village of Matteson; The Village of Matteson Police Department; Mark W. Stricker, et al., Case

3

Number 02-3754, decided by the reviewing court in an unpublished opinion on November 12, 2003. A civil rights case that was improperly dismissed by the Honorable William Hibbler, on disputed facts resolved in favor of the Defendants and the Order of Dismissal was vacated on appeal by the United States Court of Appeals for the Seventh Circuit, Honorable William J. Bauer; Honorable John L. Coffey; and Honorable Michael S. Kanne, Circuit Judges presiding. See, also, **Exhibit A**, *attached hereto and made a part hereof as a true and correct copy of the un-cited and un-published opinion of the reviewing court.*

As admonished by the reviewing court, this Honorable Court is legally obligated to take as true, all of the allegations in the unrepresented, Plaintiff's Verified Civil Rights Complaint and to draw all inferences in the light most favorable to the Plaintiff on Defendants' motion to dismiss. See, Indeck Power Equipment Co., v. Jefferson Surfit Corp., 881 F. Supp. 338 (N.D. Ill. 1995); see also, Ziemack v. Centel Corp., 856 F. Supp. 430 (N.D. Ill. 1994).

Accordingly, taking the unrepresented, Plaintiff's civil rights complaint as true as admonished by the United States Court of Appeals for the Seventh Circuit, it would be fundamentally unfair to grant Defendants' motion to substitute and dismiss.

## II

### Rebuttal Argument
### Substitution of the United States as Defendant

This Honorable Court must respectfully reject Defendants' self-serving suggestion that the United States should be substituted as a defendant in this civil rights litigation. There is no basis in law, fact or equity to support Defendants' improper and lawfully unwarranted suggestion. In fact, there are no pleading rules that require the substitution of the United States for the Defendants being sued in their individual capacity. The United States Court of Appeals for the Seventh Circuit has already

4

addressed this issue in <u>Oshana v. Coca-Cola Co.</u>, 472 F. 3d 506, 511 (7th Cir. 2006), stating that "the plaintiff [is] the master of the complaint." Accordingly, the Defendants cannot dictate to the Plaintiff how he will plead his case.

Defendants seem to find its misplaced authority for support of substitution in its unwarranted argument under the Federal Tort Claims Act ("FTCA"). While Congress did in fact consent to allow suit against the United States for common-law torts attributable to actions by federal employees within the scope of their employment, it strains credulity to the breaking point to believe that burglarizing the Plaintiff's residence and stealing a twenty-five (25) year old gold, antique watch collection would find some lawful justification "within the scope of Defendants' employment." This Honorable Court respectfully must take under advisement that several federal courts have already decided this issue in favor of the unrepresented, Plaintiff.

In <u>Lamar C. Chapman III vs. The United States of America</u>, Case Number 05-184C, United States Court of Federal Claims, in Washington, DC, Honorable Charles P. Lettow, Judge Presiding, the United States Attorney and U.S. Department of Justice agued that the United States was not liable on behalf of federal employees and that the United States Court of Federal Claims did not have jurisdiction over a "non-contractual" "non-administrative" civil rights complaint. See, **<u>Exhibit Group B</u>**, as a true and correct copy of the Opinion of the federal court of claims and made a part hereof. Secondly, the Defendants improperly argue that the Attorney General must certify that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose. See *Defendants' Memorandum in support of Motion to Dismiss at page seven.*

For this Honorable Court to adopt the suggestions of the Defendants in allowing the attorney general to make a factual determination on a motion to dismiss would be contrary to the holding of all of the reviewing circuits in the United States of America.

The Seventh Circuit Court of Appeals is in complete agreement with all other Circuits that it would be a reversible error for this Honorable Court to decide or resolve an issue of fact in Defendants' favor on a motion to dismiss. See, Terket v. Lund, 623 F. 2d 29 (7th Cir. 1980). Moreover, the Defendants have incorrectly asserted an affirmative defense that should be pled in an answer pursuant to Rule 8 (c) of the Federal Rules of Civil Procedure.

The Defendants have asked this Honorable Court to resolve factual determinations in its favor on their motion to dismiss which is strictly prohibited by well-settled law. See, Knauz Continental Autos, Inc., v. Land Rover N. Am., Inc., 842 F. Supp. 1034 (N.D. Ill. 1993). Accordingly, this Honorable Court respectfully must reject the Defendants' Motion to Substitute and Dismiss and deny the same.

### III

### Rebuttal Argument
### This Court Lacks Jurisdiction over All the Official-Capacity Damage Claims.

There are no administrative claims requirements under civil rights lawsuits brought pursuant to 42 USC, Section 1983, *et al.*, and this Honorable Court must squarely reject the Defendants' meritless argument. See, the holding of the Honorable Charles F. Lettow, Lamar C.Chapman, III vs. The United States of America, Case Number 05-184C, before the United States Court of Federal Claims, in Washington, DC. Since there are no administrative claim requirements under the Civil Rights Act, the unrepresented *Pro Se*, Plaintiff, is not obligated under any Rule of Law, set of facts or procedural circumstances to exhaust an administrative remedy as improperly argued by the Defendants.

Accordingly, Counts Eight and Ten of the Plaintiff's civil rights complaint respectfully should lawfully survive Defendants' motion to dismiss. In addition, the Defendants have improperly asked this Honorable Court to go outside the "four corners" of the Plaintiff's civil rights complaint in offering exhibits and evidence in support of its motion to dismiss. Since the Defendants have not requested or given notice of a summary judgment and this Honorable Court has not converted their motion to dismiss to a motion for summary judgment, it is improper for this Honorable Court to consider the affidavits and documents attached to Defendants' Motion to Dismiss. See, Huszagh v. DiAmico, 846 F. Supp. 1352 (N.D. Ill. 1994); and Driveway & Truckaway Serv., Inc. v. Aaron Driveway & Truckaway Co., 781 F. Supp. 548 (N.D. Ill. 1991). See also, Rule 56 of the Federal Rules of Civil Procedure.

### B.      Sovereign Immunity Bars Chapman's Constitutional Claims.

Defendants incorrectly argues that since the United States has not waived its sovereign immunity for suits for violation of the Constitution that this purported immunity somehow extends to the Defendants who are being sued in their individual capacity for blatant civil rights violations. So, whether or not, the United States has an affirmative defense for some type of immunity, this fact cannot be decided or even resolved in favor of the Defendants on Defendants' motion to Dismiss without converting the same to a motion for summary judgment. See, Fleischfresser v. Directors of Sch. Dist. 200, 15 F. 3d 680 (7th Cir. 1994).   Also, the Defendants improperly argue that government agencies are not persons within the meaning of Section 1983; and the federal officers in this case were acting under the authority of federal, not state law. See Page seven (7) of Defendants' Memorandum in Support of Motion to Dismiss.

Not only is Defendants' argument off point and irrelevant, Defendants Kim Widup, Garth Rehberg, Michele Uthe, David Perlman, and J. Russell George are in fact

persons within the meaning of the Civil Rights Act, 42 USC, Section 1983, which

provides in relevant parts:

> "Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State...subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the deprivation
> of any rights, privileges, or immunities secured by the Constitution and laws,
> Shall be liable to the party injured in an action at law, suit in equity, or other
> proper proceeding for redress..."

And for this Honorable Court to resolve any issue of fact, of whether or not the

Defendants were acting under the authority of any kind of law, state or federal in favor of

the Defendants on their motion to dismiss would be contrary to the holding and

admonishment of the Seventh Circuit in standards of review for motions to dismiss. See,

Admiral Theater v. City of Chicago, 832 F. Supp. 1195 (N.D. Ill. 1993).

The authority that the Defendants have offered in support of their argument has

no relevance to the unrepresented, Plaintiff's civil rights complaint. And therefore, this

Honorable Court respectfully must reject Defendants' argument and deny their motion to

dismiss.

**IV**
**Rebuttal Argument**

**Chapman's Complaint Is Barred by Immunity**
**and by Chapman's Criminal Conviction**

Whether or not the unrepresented, Plaintiff's civil rights complaint is barred by

any type of immunity is a factual issue that cannot be decided in the Defendants' favor on

their motion to dismiss. See, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The

Defendants incorrectly argues that an unrelated criminal conviction was reason enough

for the Defendants to conspire to burglarize the Plaintiff's residence and to remove a

precious gold antique, wrist watch collection valued in excess of thirty-two ($32,000.00)

thousand dollars, and to intentionally suspend the fourth amendment of the United States

Constitution that prohibits warrantless searches and seizures. The United States Supreme Court squarely rejected this argument in Hishon.

Whether or not the Plaintiff's criminal conviction or ill-advised plea bargain is constitutional or not, jurisdictional or not, is separate and distinct from the proceedings before this Honorable Court. The unrepresented, Plaintiff's civil rights lawsuit cannot even be deemed to be derivative from any other matters previously pending or currently pending before the federal courts. In fact, Defendants' reliance on Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), for authorization is also, well misplaced and misses the mark.

The allegations in Plaintiff's civil rights complaint allege that Defendants cut the second floor veranda screen, unlatched the door to the veranda and came into the Plaintiff's home. Plaintiff's civil rights complaint further alleges that there were no search warrants whatsoever to authorize Defendants' entrance into his home to search the same or to remove his property. *See Plaintiff's First Amended Verified Civil Rights Complaint.*

Although the unrepresented, Plaintiff pled guilty to the utterance of a forged security, more than eight (8) months after his ill-advised guilty plea on a "local law" matter, federal Marshals and federal employees used a fraudulently prepared federal Arrest Warrant that had never been issued by any Court or executed by a federal judge or federal magistrate in accordance to Rule 4(b)(1)(D) of the Federal Rules of Criminal Procedure, to unlawfully operate as a search warrant to enter into; to search Plaintiff's home; and to seize his personal property.

The Supreme Court held in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), that a person is barred for suing for false arrest under the Civil Rights Act, until the underlying criminal conviction is nullified or vacated. The Plaintiff's civil rights lawsuit,

9

taken as true as required by law, is a Fourth Amendment, civil rights lawsuit and <u>Heck</u> does not bar Plaintiff's litigation as improperly argued by the Defendants.

Moreover, whether or not Judge Zagel in an unrelated proceeding did order that a warrant to be issued for Plaintiff's arrest and that the court denied Plaintiff's motion to quash the purported warrant, no warrant for Plaintiff's arrest or warrant to search Plaintiff's home was ever signed by Judge Zagel as required by Rule 4(b) (1) (D) of the Federal Rules of Criminal Procedure, barring Plaintiff's lawsuit against the Defendants for the violation of his Fourth Amendment Constitutional Rights prohibiting the unlawful search of Plaintiff's residence. *See United States Constitution, Amendments Four and Fourteen,* U.S.C.A, Amends. 4 and 14.

**Exhibit A**, attached to the Plaintiff's First Amended Civil Rights Complaint is an unsigned copy of the return of arrest warrant issued by the Defendants, and not by the court and signed by two of the Defendants named herein and not signed by any judge of any court. Once again, this issue cannot be resolved in favor of the Defendants on their motion to dismiss. See, <u>Talley v. Lane,</u> 13 F. 3d 1031, (7th Cir. 1994), and <u>Gale v. United States Gov't,</u> 786 F. Supp. 697 (N.D. Ill. 1990)

Consequently, the unrepresented, Plaintiff's civil rights lawsuit is not barred by <u>Heck</u> or any other authority and Defendants' motion to dismiss respectfully must be denied.

## V
## Rebuttal Argument

### The Time and Extended Time-Period Allowed for Service On the Individual Defendants Has Expired

The Defendants have self-servingly and improperly claimed that they have not been served with process by the Plaintiff in this lawsuit as required by Rule 4(m) of the Federal Rules of Civil Procedure. Not only did this Honorable Court reject Defendants'

argument when it denied the Defendants' first Motion to Dismiss for Failure to Make

Service of Process, a motion to dismiss is not the proper forum for the renewal of

Defendants' Motion to Dismiss and to allow the Defendants to take a second bite at the

apple.  Also, there is no evidence offered by the Defendants to dispute the affidavits on

the Clerk of the Court's Docket that the Defendants have been served with the process of

this Honorable Court.

In fact, Illinois law and Rule 103 of the Illinois Supreme Court which has the

power, affect and authority of law has clearly established that Defendants have waived

any argument of improper service with the filing of their appearance and motion to

dismiss and "active participation of their defense in this case."   See, Cannon v. Dini, 226

Ill. App. 3d 82, 168 Ill. Dec. 253, 589 N.E. 2d 653 (1 Dist. 1992)

Procedurally speaking, under Illinois law, Defendants were required to file a

"special and limited" Appearance and a motion to quash.  Including counter affidavits

indicating that the Defendants have not been served.  Defendants have failed to file any

motion to quash and once again, want this Honorable Court to resolve this critical issue in

their favor on their motion to dismiss.  The U.S. Court of Appeals for the Seventh Circuit

has admonished the lower courts to not resolve any issues of fact in Defendants' favor on

Defendants' Motion to Dismiss. See, Lamar C. Chapman III vs. The Village of

Matteson, et al., attached hereto as Exhibit B.; See also, Terket v. Lund, 623 F.2d 29

(7th Cir. 1980).

Moreover, the unrepresented, Plaintiff has filed with the Clerk of the Court

affidavits in support of service of the Summons of this Court as required by the Rules of

the Court.  The Defendants have offered nothing but their word that they have not been

served.  This Honorable Court respectfully must see through Defendants' self-serving

conduct in their motion to dismiss. Accordingly, this Honorable Court respectfully must

deny the Defendants' motion to substitute and dismiss.

## VI

### Rebuttal Argument
### Statute of Limitation

The Defendants have improperly attempted to pick a date for the filing of the

unrepresented Plaintiff's civil rights lawsuit that would support their argument for a

dismissal for statute of limitations violation. Although the Defendants incorrectly believe

that the Plaintiff's complaint was filed more than ten days too late, the law says that

while expiration of the statute of limitations is an affirmative defense that may be pled in

an answer pursuant to Rule 8 (c), of the Federal Rules of Civil Procedure, it can be used

as a basis for granting a 12(b) (6) motion where the case is "obviously time-barred." See,

Small v. Chao, 398 F. 3d 894, 898 (7th Cir. 2005), Fed. R. Civ. P. 8 (c), 12(b) (6).

Since the case before this Honorable Court has multiple dates of filing, re-filing,

and leave to file, and the exhibits have conflicting dates later than January 13, 2006, or

January 16, 2006, and May 17, 2006, there is nothing "obviously time-barred" by

Plaintiff's civil rights case to warrant resolving this critical, factual issue in their favor on

Defendants' motion to dismiss. See, Gutierrez v. Peters, 111 F. 3d 1364, 1368-69, (7th

Cir. 1997).

## VII

### Rebuttal Argument
### Qualified Immunity

There is no doubt in any reasonably thinking person's mind that the Defendants

herein were not performing discretionary functions and that their conduct in fact did

violate "clearly established" constitutional rights about which any reasonable person

would have known at the time of the event in question. There is no legal theory that

would permit this Honorable Court to grant qualified immunity on Defendants' motion to dismiss as unconscionably argued by the Defendants. See, Wilson v. Layne, 526 U.S. 603, 609-10 (1999); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The unrepresented, Plaintiff's civil rights claim is crystal clear and "cut and dried" as stated by this Court, Honorable James B. Moran, Senior United States District Judge, presiding in a civil rights lawsuit filed by the unrepresented, *pro se*, Plaintiff more than eleven (11) years ago. The Defendants have falsely pled that this lawsuit is a collateral attack on a criminal plea bargain. Defendants have also falsely pled that this claim is about Defendants somehow interfering with the Plaintiff's ability to file a criminal complaint for residential burglary with the Hinsdale Police Department. And the Defendants finally falsely plead that when the Defendants broke into the Plaintiff's house, searched the same and stole an antique gold wrist watch collection valued at thirty-two ($32,000.00) thousand dollars, that this "*does not state a colorable Constitutional claim...*"

Defendants have strained credulity to the breaking point.

Defendants have insulted the integrity of this Honorable Court and the intelligence of the presiding judge. Not only does Plaintiff's civil rights complaint state a colorable Constitutional claim, that claim is "*cut and dried.*" Moreover, the claim set forth by the African-American, unrepresented, Plaintiff is clearly malicious and criminal in nature and this matter respectfully should be referred to the Chicago Office of the Federal Bureau of Investigation ("FBI") seeking a Grand Jury Indictment.

## VIII

### Rebuttal Argument
### Injunctive Relief

This Honorable Court has jurisdiction to *sua sponte* enter an order of protection and injunctive relief for the morally required benefit and personal safety of the Plaintiff

13

and his family *instanter*. As fully established in Plaintiff's First Amended Complaint

there has never been a more compelling reason for this Honorable Court to order the

parties or their agents to have no contact whatsoever with each other. Although the

Plaintiff lives in a gated community, this fact as shown does not and cannot stop the

Defendants from entering Plaintiff's gated community or home at any hour, or at any

time they desire. Plaintiff lives in constant fear for his wife of thirty-three years, two

married adult daughters and his three granddaughters.

The fact that the local police department has refused to answer Plaintiff's 911

emergency calls regarding the Defendants and that the Defendants have willfully refused

to comply with fundamental civil rules regarding discovery and other civil requirements

of litigation in this matter, illustrates with specificity that Defendants have been

encouraged to do whatever they wish against the Plaintiff and his family. Moreover,

since the Executive Committee entered its non-jurisdictional order on September 17,

2002, barring the Plaintiff's meaningful access to the court, Defendants and their agents

are even more encouraged to violate the Plaintiff's federally protected rights with

impunity and without any concern for legal or punitive consequence or jeopardy.

Granting an injunction will cause no harm whatsoever to the Defendants.

Withholding an injunction from the Plaintiff sends a dangerous message to the legal

community at large and places a morally unwarranted target on the Plaintiff, his wife, two

daughters, three precious granddaughters and eighty-one (81) year old mother.

### Conclusion

To dismiss the unrepresented, Plaintiff's civil rights complaint is to allow the

Defendants to suspend due process and the federal protection of the United States

Constitution. The Honorable James B. Moran has admonished from the Bench and in

14

written opinion that *"...protecting the civil rights of the American People is the most important function of the federal court."*

   Please, do no harm!  Let freedom ring...God Save America.  GOD BLESS THIS HONORABLE COURT!

       *Very Respectfully Submitted,*

       _____
       LAMAR C. CHAPMAN III, Plaintiff, *Pro Se*

**DATED: July 16, 2008**

Non-Attorney, Non-Lawyer
Plaintiff, *Pro Se*
LAMAR C. CHAPMAN III, *Solo Fides*
Alexander, Cavanaugh & Block, LLC
1314 Kensington Road
Post Office Box 5232
Oak Brook, IL 60523-5232
Telephone (630) 881-1936
Email: lasallecompanies@aol.com

# PLAINTIFF'S EXHIBIT, A

AO 442 (Rev. 6/97) Warrant for arrest

## United States District Court
Northern District of Illinois
Eastern Division

United States of America                        **WARRANT FOR ARREST**

v.

Lamar Chapman                          Case Number: 04 cr 397-1

To:    The United States Marshal
       And any Authorized United States Officer

       YOU ARE HEREBY COMMANDED to arrest Lamar Chapman and bring him or her
forthwith to the nearest magistrate judge to answer a(n)

       Indictment    Information    Complaint    X Order of court    Violation Notice
Probation    Violation Petition

charging him or her with:   Failure to surrender for sentencing
                            (See Attachment)

in violation of Title United States Code, Section(s)

Terry Yearout Issuing Officer                    U.S. Deputy Clerk

                                                 February 14, 2005; Chicago

Signature of Issuing Officer

Bail fixed at $                                  , Judicial Officer

| RETURN |
| --- |

This warrant was received and executed with the arrest of the above-named defendant at

| Date Received | Name and Title of Arresting Officer | Signature of Arrest Officer |
| --- | --- | --- |
| Date of Arrest | | |

LOCK-UP

2005 FEB 14  PM 2:59

UNITED STATES MARSHAL

DEFENDANT'S EXHIBIT, 3

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## WASHINGTON, D.C.

RECEIVED

JUN 7 2005

U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

LAMAR C. CHAPMAN III,
*And All Other Similarly Situated,*

                    *Plaintiffs,*

       -vs-

THE UNITED STATES OF AMERICA,

                    *Defendant.*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**CASE NUMBER: 05-184C**

Honorable Charles P. Lettow,
*Judge Presiding*

## SECOND REQUEST FOR MOTION FOR RULING

*NOW COMES PLAINTIFF,* Lamar C. Chapman III, *Solo Fides,* Non-Attorney, Non-Lawyer, *Pro Se* and in accordance with the Rules of Civil Procedure before the United States Court of Federal Claims, respectfully moves this Honorable Court for a ruling on Plaintiff's Motion for Injunctive Relief; Motion for Briefing Schedule on Defendant's Motion to Dismiss; and Motion for Plaintiff's Previous Motion for Ruling. And in support of Plaintiff's motion, Plaintiff states as follows:

    1. Plaintiff is before this Honorable Court *pro se* and without the benefit of counsel.

    2. On or about January 31, 2005, Plaintiff filed with the Clerk of the Court a nine (9) count verified complaint alleging civil rights violations; conspiracy to deprive the plaintiff of his fundamental rights to free speech; due process; equal protection under the law; and other misconduct of federal employees.

1

# PLAINTIFF EXHIBIT GROUP, B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

Office of the Clerk

:hael W. Dobbins
    CLERK

        Lamar C Chapman III
        6106 Elm Lane
        Matteson, IL  60443-1322

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
        Case Number:  1:02-cv-02327

        Title:  Chapman v. Stricker

:signed Judge: Honorable William J. Hibbler


:NUTE ORDER of 10/11/02  by Hon. William J. Hibbler : For
:e attached reasons, defendants' motion to dismiss
:mplaint [9-1] [17-1] is granted. terminating case (See
:verse of minute order.) Mailed notice


:his docket entry was made by the Clerk on October 15, 2002


:TENTION:  This notice is being sent pursuant to Rule 77(d) of the
        Federal Rules of Civil Procedure or Rule 49(c) of the Federal
        Rules of Criminal Procedure.  It was generated by ICMS,
        the automated docketing system used to maintain the civil and
        criminal dockets of this District.  If a minute order or
        other document is enclosed, please refer to it for
        additional information.

:or scheduled events, motion practices, recent opinions and other information,
:sit our web site at www.ilnd.uscourts.gov

:heck our web site for CourtWeb--a concise listing of rulings by judges.
:heck for rulings on noticed motions.  Also, subscribe to CourtWatch--a free
:ervice--to receive e-mail notification of CourtWeb postings.

:o apply for a PACER account, call 1.800.676.6856

(Reserved for use by the Court)
# ORDER

Lamar Chapman's proclivity for filing frivolous and vexatious lawsuits is well known. *See Chapman v. Charles Schwab & Co.*, No. 01-C-9697, 2002 WL 818300 (N.D. Ill. April 30, 2002) (recounting Mr. Chapman's litigation history). Because of his propensity for filing frivolous suits, the Executive Committee recently entered an order enjoining Mr. Chapman from future filings without first receiving leave from the Executive Committee. *See In re Chapman*, 02-C-6581 (N.D. Ill. Sept. 20, 2002). Mr. Chapman's suit in this case, though not subject to the Executive Committee Order, is no different. Defendants have filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), which is fully briefed and is ripe for ruling.

The gravamen of Mr. Chapman's complaint is simple: he alleges that the defendants conspired to deprive him of his First Amendment rights by interfering with his distribution of flyers that expressed his opposition to the Village's current administration. In short, Mr. Chapman alleges that Defendant Stricker (the Mayor of Matteson), Defendant Vis (Matteson's Police Commissioner), and Defendant Wilson, (a Matteson Police Officer) engaged in a covert conspiracy to deprive him of his civil rights by removing flyers that he placed on cars at various Matteson locations.

In reviewing a motion to dismiss, all well-pleaded facts are accepted as true and are construed in favor of the plaintiff. *Hickey v. O'Banron*, 287 F.3d 656, 657 (7th Cir. 2002). Here, Mr. Chapman has failed to plead facts that, if true, state a claim under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege that he was deprived of a federal right and that the deprivation was imposed upon him by a person acting under color of state law. *Harbours Pointe of Nasbotah, LLC v. Village of Nasbotah*, 278 F.3d 701, 704 (7th Cir. 2002). Mr. Chapman alleges only that defendants Stricker and Vis engaged in some sort of covert conspiracy to remove his flyers from the vehicles on which he had left them. While Mr. Chapman has a First Amendment right to express his opinion about Matteson's elected officials, this right is not unfettered. Matteson's littering ordinance (of which the Court takes judicial notice) *prohibits* the attachment of flyers to unattended vehicles. The state may enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. *Perry Educ. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 45 (1983). Mr. Chapman does not contend that the Village ordinance is unconstitutional or was unfairly applied. Indeed, the ordinance allows several alternative channels for Mr. Chapman to distribute his literature. He was free to distribute his pamphlets to passersby or to canvas door-to-door on behalf on his chosen political candidate. Mr. Chapman does not allege that defendants Stricker or Vis prohibited him from distributing his flyers to passersby or door-to-door. Accordingly, the Court holds that Mr. Chapman does not have a property or liberty interest in attaching his flyers to unattended vehicles throughout the Matteson village limits. The Court therefore finds that Mr. Chapman has failed to state a claim under § 1983 based on the defendants' removal of his flyers.

Mr. Chapman also alleges that at one time during his efforts to circulate his flyers, Defendant Wilson ordered him to stop and asked to see Mr. Chapman's identification. But a police officer does not violate a person's constitutional rights merely by approaching them and asking to see identification when the officer has a lawful reason to ask for identification (for instance if the person is engaged in an activity that violates a village ordinance, as here). *See, e.g., Terry v. Ohio*, 392 U.S. 1, 20 (1968); *People v. Gonzalez*, 753 N.E.2d 1209 (Ill. App. Ct. 2001).

There is another reason why Mr. Chapman's complaint fails. Nowhere in his complaint does he allege any fact to show that Defendants Stricker and Vis acted under color of state law. Mr. Chapman makes conclusory allegations that Stricker and Vis watched him as he distributed his flyers and also reported his activities to the police. But Mr. Chapman never alleges that Stricker and Vis *ordered* the Village police to interfere with his leafleting. *See Hughes v. Meyer*, 880 F.2d 967, 972 (7th Cir. 1990) (warden's reporting of suspected crime was not a state action because the calls were not made in his capacity as a state official).

For the foregoing reasons, Mr. Chapman's claim is DISMISSED.

Not to be cited per Circuit Rule 53

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted November 4, 2003[*]
Decided November 12, 2003

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

No. 02-3754

LAMAR CHAPMAN, III,
*Plaintiff-Appellant,*

v.

MARK W. STRICKER, et al.,
*Defendants-Appellees.*

Appeal from the United States
District Court for the Northern
District of Illinois, Eastern Division

No. 02 C 2327

William J. Hibbler,
*Judge.*

### ORDER

Lamar Chapman III filed suit under 42 U.S.C. § 1983 alleging that several employees of the village of Matteson, Illinois, violated his constitutional rights by thwarting him from distributing a political flyer. Chapman initially received a default against two defendants who had not been properly served, but the district court later set it aside and eventually dismissed the complaint in its entirety for failure to state a claim. We vacate the dismissal and remand.

We assume for purposes of our review that the following facts as alleged in Chapman's complaint are true. In April 2001 Mark Stricker was running for reelection to the Matteson Board of Trustees. Chapman was opposed to Stricker's

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

No. 02-3754                                                    **Page 2**

reelection, so he went to two church parking lots, an elementary school, and private homes to distribute a flyer that criticized Stricker and promoted Chapman's favored candidates instead. Chapman was circulating both in Matteson and in the nearby village of Flossmoor, but it is not clear from his complaint whether he was leaving the flyers only on front doors and unattended cars or whether he was also distributing them to willing recipients. Chapman's efforts, though, were mostly for naught. William Vis, who served as Stricker's campaign aid and also as the Matteson police commissioner, removed the flyers that Chapman had put on cars in a church parking lot in Flossmoor and directed an off-duty Matteson police officer to stop Chapman from circulating in a Matteson church parking lot. Stricker himself removed Chapman's flyers from cars at a Matteson elementary school and then enlisted the help of a non-party, Henry Swan, to replace all of the flyers Chapman had left at homes in Matteson with ones promoting Stricker and Vis. Swan was rewarded for his cooperation with "non-bid Village insurance business." Stricker and Vis ultimately called the Matteson police to report Chapman's leafleting. Officer R. Wilson and other unnamed officers found Chapman on the street, "verbally restrained" him, and ordered him to produce identification. Wilson told Chapman to stop circulating the "slanderous" flyers because he needed to register with the village before circulating. Chapman, who is African American, claims that Stricker, Vis, and Wilson, all of them "European American," acted under color of law to deprive him of his rights to free speech, equal protection, due process, and privacy. He contends that they discriminated against him based on his race and political beliefs.

As an initial matter Chapman contends here that the district court erred in vacating the default against Vis and Wilson, a decision we review for an abuse of discretion. See *Robinson Eng'g Co., Ltd. Pension Plan & Trust v. George*, 223 F.3d 445, 446 (7th Cir. 2000). In order to have an entry of default vacated, the moving party must show (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint. *Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994). Although the district court did not articulate its evaluation of these factors in its written decision, we cannot find that the court abused its discretion. Vis and Wilson took quick action to cure the default, filing a motion to enter their appearances two business days after it was entered. They showed good cause for the default—they had not been properly served with process—and also told the court that they planned to pursue a meritorious defense by joining in Stricker's motion to dismiss. See *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994) (meritorious defense need not be one that will definitely succeed); see also *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988). We therefore cannot say that the district court abused its discretion by vacating the default against Vis and Wilson.

No. 02-3754                                                           Page 3

As to the merits, the district court concluded that Chapman, a plaintiff with a "proclivity for filing frivolous and vexatious lawsuits," had brought yet another frivolous suit, this time failing "to plead facts" to support his claims. Indeed, the district court thought Chapman's suit so meritless that the court did not even mention all of his claims. The Supreme Court has made clear, and we have held repeatedly, that the federal system requires only notice pleading; a plaintiff need not plead all of the elements of his claims or all of the facts necessary to support them. *See, e.g., Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 166-67 (1993); *Walker v. Thompson,* 288 F.3d 1005, 1007 (7th Cir. 2002). Rather, a complaint need only contain a "short and plain statement" that gives "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema,* 534 U.S. 506, 512 (2002) (citation omitted). Chapman's complaint satisfies this standard.

To state a claim under § 1983, a plaintiff must allege that the defendants acted under color of state law to deprive him of specific constitutionally protected rights. *Case v. Milewski,* 327 F.3d 564, 566 (7th Cir. 2003). Chapman alleges that the defendants acted under color of law, and violated several of his constitutional rights. First, he contends that the defendants interfered with his right to free speech. As the basis for this claim he details how the defendants interfered with his leafleting by ordering him to stop circulating, confiscating the flyers he had already distributed, and enlisting the help of local police to restrain him.

The district court, relying on a Matteson anti-littering ordinance, concluded that the defendants were merely enforcing reasonable time, place, and manner restrictions on Chapman's speech. That conclusion cannot be sustained for a number of reasons, not the least of them that the ordinance merely prohibits depositing handbills in public places and on unattended vehicles but does not bar distribution to individuals in public places or cars and imposes no restriction on leafleting at private homes. Matteson, Illinois Code § 130.07. Taking him at his word, Chapman's leafleting activities were not confined to placing his flyer on unattended vehicles; indeed, he claims that the defendants not only stopped him from leaving his pamphlet at private residences but also replaced the pamphlets he left at homes with their own. Moreover, Chapman's leafleting extended to Flossmoor, presumably outside of the reach of Matteson's ordinance.

The district court's conclusion is also erroneous because the court engaged in impermissible factfinding to determine on a motion to dismiss that the defendants had acted to enforce the ordinance rather than, as Chapman alleges, because of racial animus and a desire to suppress his political views. By Chapman's account the defendants never mentioned the ordinance when interfering with his leafleting, and since they deny acting under color of state law, it is unclear to us how—as

No. 02-3754                                                                Page 4

ordinary citizens—they could also have been acting with the purpose of enforcing this ordinance.

Finally, in concluding that the ordinance placed reasonable time, place, or manner restrictions on Chapman's speech, the district court reasoned that he had sufficient alternative channels of communication open to him, specifically the ability to "distribute his pamphlets to passersby or to canvass door-to-door." But as Chapman correctly points out on appeal, his complaint specifically alleges that the defendants *stopped* him from circulating his flyers in these alternative ways. Whether Chapman was able to distribute his flyers to willing recipients will likely be an integral fact in resolving his First Amendment claim under § 1983, see *Schneider v. New Jersey*, 308 U.S. 147, 162 (1939); *Krantz v. City of Fort Smith*, 160 F.3d 1214 (8th Cir. 1998) (declaring as facially overbroad an ordinance similar to Matteson's), but at such an early stage in the litigation the court should have drawn any inferences from the facts in Chapman's favor, see *Midwest Gas Servs., Inc. v. Ind. Gas Co.*, 317 F.3d 703, 709 (7th Cir. 2003).

Chapman also says that the defendants violated his right to equal protection. To the extent that his claim rests on the theory that he was treated differently based on his political beliefs or opposition to particular political candidates, that contention seems to be more appropriately litigated as part of his First Amendment claim. *Cf. Graham v. O'Connor*, 490 U.S. 386, 395 (1989) (substantive due process not appropriate vehicle for litigating claim when a more specific amendment is applicable). But his allegation that the defendants interfered with his political activities on the basis of his race states an equal protection claim. *See Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 262 (7th Cir. 1999) (plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular group).

In addition, Chapman claims that the defendants violated his rights to due process and privacy, but only the latter finds any hint of support in his complaint. As to privacy, Chapman's complaint states a claim that he was deprived of his Fourth Amendment right not to be subjected to unreasonable searches or seizures. *See Roach v. City of Evansville*, 111 F.3d 544, 550 (7th Cir. 1997). Chapman says that Officer Wilson's stated reasons for stopping him were that the flyer was "slanderous" and that he needed to register with the village before circulating it in any case. The defendants have never pointed to any such ordinance, and without knowing whether such a registration requirement exists, the district court could not assume that Wilson stopped him for a valid reason. The district court's conclusion that a different ordinance, the one prohibiting littering, provided reasonable suspicion to stop Chapman relies on the factual conclusion that the reason for the

No. 02-3754                                                       Page 5

stop was the littering ordinance, and nothing in the complaint mandates such a factual conclusion.

       Accordingly, we VACATE the district court's dismissal of Chapman's complaint for failure to state a claim and REMAND for further proceedings.

## MORE LETTERS



## Equal treatment

To the Editor:

As always, your editorial page glistens with reason and logic and the editorial concerning casino gambling in Cook County was right on target, except that, in my opinion, it was not aggressive enough.

As some who read through the pages, the city attorney for the city of Calumet City and was directly involved in negotiating an agreement with the South Suburban Mayors and Managers Association which, in effect, gives a share for a period of time of 80 percent of the revenue from any gaming boat and/or casino that may be permitted in Calumet City, I do not speak as the city attorney of Calumet City but as an elected trustee of the village of Flossmoor but as a citizen trying to imprint common sense to the...

Your editorial states that "early returns indicate that gambling is hitting a point of diminishing returns." This may or may not be true statistically but I can assure you that the proceeds to the owners of the boats and the municipalities of Hammond, Ind. and Gary, Ind. ...

Thousands of Illinois citizens cross the Calumet City and the Little Calumet River to gamble in Indiana. Literally, thousands of people a day take Illinois dollars to Hammond and Gary which, of course, do not benefit the county of Cook with the state of Illinois...

and the South Suburban Mayors and Managers Association must feel pleased each time they allow this drain of Illinois money. To continue to allow this drain of Illinois money, if a potential tax benefit is insanity. Surely a well-run riverboat casino in Calumet City would be, in my opinion, contrary to your assertion that "a riverboat on the Cal-Sag won't do diddly for the comprehensive long-term economic health of the region."

Quite to the contrary, millions of dollars could be made available to municipalities in well...

Surely, the citizens of this state and particularly Cook County must feel that they are being disenfranchised from a very important revenue source which, if properly controlled, can be a valuable asset.

No matter what one's moral view, one inescapable fact is obvious. The old end of Cook County have and been treated with equal protection under the law. It is incredulous to me that our Legislature and our governor would even consider continuing to deprive Cook County (and particularly the old ...

## No to Aldo

To the Editor:

Clifford Blake, your "Proven leader" letter to the editor for the Star reads like a campaign endorsement of state Sen. Aldo DeAngelis. Considering your connection with the Star newspaper and Sen. DeAngelis influence in the Chicago Heights area...

gain influence in the Star would allow you to ramble on about Mr. DeAngelis' proven leadership skills. This letter, if the Star is allowed enough to print it, shall serve as a needed respite to your outlandish claims shared by Mr. DeAngelis that he is "A proven leader."

First of all, please let me start by saying I am a sustaining member of the National Republican Committee. I also have served on my local, state and federal military with gubernatorial (Republican Gov. Quinn) and Presidential (Republican Richard Nixon) commissions. I also have been a judge of elections for the Republican Party for several years as appointed by the presiding judge for the Circuit Court of Cook County-County Division.

I have always supported the qualified Republican...

## A real shame

To the Editor:

On Thursday, Sept. 19, the Chicago Southland Chamber of Commerce conducted a developers tour and exhibition. Three business developers, financial institution representatives, real estate brokers...

## Bill Simpson

To the Editor:

It is sad to read of Mr. William Simpson's death.

I met him only once, but read many of his letters to the Star. His strong opinions generated many ideas which were in contrast...